GENERAL MOTORS ACCEPTANCE CORPORATION, Respondent, v GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, Appellant.

Fourth Department, April 6, 1979

## APPEARANCES OF COUNSEL

*O'Shea, Adamson, Reynolds & Napier (Linda Pipo* of counsel), for appellant.

*Davis, Nesper & McElvein (Gabriel J. Ferber* of counsel), for respondent.

## OPINION OF THE COURT

WITMER, J.

On this appeal we examine the legal effect of a draft providing for its payment "through" a designated bank as distinguished from a draft or check drawn on such bank.

One Norek purchased an automobile financed by plaintiff, for which he gave plaintiff a documentary security instrument which was duly filed. He insured the automobile against theft through defendant insurance company. On December 16, 1977 he reported to defendant that the vehicle had been stolen and he filed a claim with defendant for the loss. On January 11, 1978 defendant undertook to honor its apparent obligation under its insurance policy by issuing and delivering to Norek a draft, drawn on itself and payable through the First Pennsylvania Bank, NA of Philadephia, Pennsylvania, in the amount of $5,878.63, payable to Norek, its insured, and also to plaintiff because of the latter's security interest in the insured vehicle. Norek took the draft to plaintiff who had him indorse it and pay the additional sum of $60.01 due on the secured loan, in extinguishment of plaintiff's security interest in the vehicle. Plaintiff thereupon released to Norek its lien on the vehicle and caused documents of title thereto to be delivered to him. Plaintiff also indorsed the draft and deposited it in its account in the Marine Midland Bank, which credited plaintiff's account therewith.

After delivering the draft to Norek defendant learned that the automobile had not been stolen and that Norek's claim for its loss had been fraudulent, and it stopped payment on the

draft. Plaintiff was not notified that Norek's claim was fraudulent or of the stop-payment order until January 30, 1978 when its bank, Marine Midland, notified it that First Pennsylvania Bank had dishonored the draft upon its presentment for payment. At that time Marine Midland, in normal course, debited plaintiff's account with the amount of the dishonored draft; and plaintiff demanded of defendant payment of the draft. This action followed defendant's refusal of payment. Special Term found no question of fact in the case and granted summary judgment to plaintiff. We agree.

Because this draft was drawn by defendant on itself, *payable through* the First Pennsylvania Bank, defendant contends that the situation is the same as though it were only the drawee of the draft, and it is not liable thereon because it did not accept it (see Uniform Commercial Code, § 3-409, subd [1]) but, instead, stopped payment on the draft; and that Special Term erred in holding it liable thereon.

This draft was not a check because it was not drawn on the drawer's account in the First Pennsylvania Bank as drawee with direction to the bank to pay it (Uniform Commercial Code, § 3-104). Instead, it was drawn by the drawer on itself as drawee, *payable through* the drawer's bank, First Pennsylvania. Such an instrument does not call upon that bank, or even authorize that bank, to pay the draft; it merely designates that bank as a collecting bank to present the draft to the drawer-drawee for payment (Uniform Commercial Code, § 3-120; and see Official Comment in McKinney's Cons Laws of NY, Book 62½, Uniform Commercial Code, § 3-120; *Oneida Nat. Bank & Trust Co. of Cent. N. Y. v Allstate Ins. Co.,* 76 Misc 2d 1062; *People v Burke,* 38 Cal App 3d 708; 14 UCC Rep, 976 [1974]). The statute (Uniform Commercial Code, § 3-120) recognizes a common practice in certain businesses, including insurance companies. This method of operation permits the drawer of such drafts (who may have authorized many agents to draw them) to take a second look at them to be sure that they are properly drawn before finally approving payment. It also enables the drawer to conduct business in this manner without maintaining idle funds in drawee banks, awaiting presentment of the drafts (see, generally, Murray, Drafts "Payable Through" Banks, 77 Comm LJ, 389).

The drawer of a draft on another party is only secondarily liable upon it (Uniform Commercial Code, § 3-413, subd [2]; but, see, also Uniform Commercial Code, § 3-502, subd [1] and

White and Summers, Uniform Commercial Code, § 13-9, pp 412-413). He promises to pay if the drawee fails to carry out the order and the holder makes presentment and gives notice of dishonor pursuant to section 3-501 of the Uniform Commercial Code (see, also, Uniform Commercial Code, § 3-413, subd [1]). Acceptance of the draft by the drawee (see Uniform Commercial Code, § 3-410, Official Comment 4) does not affect the automatic liability of the drawer of the draft, but it interposes the primary independent liability thereon of the drawee (see White and Summers, Uniform Commercial Code, §§ 13-8 and 13-9, pp 410-411). Upon issuance of the draft the drawer engages that upon its dishonor and appropriate notice and protest, he will pay it, unless he notes thereon that it is drawn without recourse (Uniform Commercial Code, § 3-413, subd [2]). The draft in this case was not drawn without recourse and, since there was no drawee (other than defendant itself) who accepted responsibility for it, defendant remains liable thereon (see *Taboada v Bank of Babylon,* 95 Misc 2d 1000).

Defendant asserts that because plaintiff was a copayee of the draft along with Norek, it was not a holder in due course and is subject to defendant's defense against Norek, to wit, that the draft was fraudulently obtained. It is clear that the draft was principally issued to Norek as the insured, and plaintiff's name was added as payee only to protect its duly filed security interest in the insured vehicle. Upon issuance of the draft defendant acknowledged Norek's claim that the vehicle had been stolen, and plaintiff was entitled to rely upon that representation and to accept the draft as a holder in due course in payment and release of its lien on the vehicle. Such action by plaintiff constituted the giving of value for the draft (Uniform Commercial Code, § 3-302, subd [1], § 3-303, subds [b], [c]; *Saale v Interstate Steel Co.,* 27 AD2d 1, 3-5, affd 19 NY2d 933). After defendant stopped payment on the draft it remained liable on it to plaintiff as a holder in due course (see Official Comment 8, under section 4-403 of the Uniform Commercial Code; McKinney's Cons Laws of NY, Book 62½).

The affidavit by defendant's attorney raised no issue of fact in this case (see *Bruno v Bruno,* 60 AD2d 788; Siegel, New York Practice, § 281, p 337), and summary judgment was properly granted to plaintiff.

The judgment should, therefore, be affirmed.

SIMONS, J. P., HANCOCK, JR., CALLAHAN and MOULE, JJ., concur.

Order and judgment unanimously affirmed, with costs.