AETNA CASUALTY & SURETY COMPANY *vs.* MICHAEL
FENNESSEY & another.[1]

No. 93-P-1142.

Norfolk. June 10, 1994. - November 23, 1994.

Present: DREBEN, GREENBERG & LAURENCE, JJ.

*Negotiable Instruments*, Drawer, Payment, Forgery. *Uniform Commercial
Code*, Payment on negotiable instrument. *Conversion. Negligence*, In-
surance company, Duty to prevent harm. *Agency*, Indorsement of nego-
tiable instrument. *Attorney at Law*, Indorsement of check.

A certain negotiable instrument was, on its face, a check payable by a
bank and not a draft payable by the drawer; as such, the maker was not
liable under G. L. c. 106, § 419 (1) & (2), for the instrument's conver-
sion when it was paid on a forged endorsement. [669-672]
A defendant who established in his negligence counterclaim against an in-
surance company that the custom and practice of the insurance indus-
try is to draft settlement checks payable jointly to attorneys and in-
sureds did not thereby demonstrate that the insurance company had a
duty to issue a settlement check jointly to the plaintiff and his former
attorney. [672-673]
An insurance company discharged its contractual obligation to pay a set-
tlement, under common law principles of agency, by issuing and deliv-
ering the settlement checks to the attorney for the injured parties, even
though the attorney forged the insured's name on one check and cashed
the other and retained all the proceeds. [673-674]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 30, 1991.

The case was heard by *Patrick F. Brady*, J., on a motion
for summary judgment.

*Arlene S. LaPenta* (E. Steven Coren with her) for the
defendants.
*Beth R. Levenson* for the plaintiff.

---

[1] Andrea Finn.

GREENBERG, J. On June 9, 1987, the defendants, Michael Fennessey and Andrea Finn, were involved in an automobile accident with an insured of Aetna Casualty & Surety Company (Aetna). Both of them retained Seymour Goldwyn as their attorney, and each entered into a contingency fee agreement with him.

After investigation and negotiation, Goldwyn accepted from Aetna a settlement offer for each of the defendants of $25,000, the policy limit. On June 20, 1989, Aetna issued a check for $25,000 payable to "Seymour G. Goldwyn atty and Andrea Finn." On June 21, 1989, Goldwyn forged Finn's signature and negotiated the check at the Olympic International Bank & Trust Company (Olympic Bank) where he held an account. Then, on December 12, 1989, Aetna issued another check for $25,000 payable to "Seymour G. Goldwyn atty for Michael Fennessey" which was negotiated by Goldwyn on January 22, 1990, at the Olympic Bank.

Goldwyn absconded with the funds, and neither defendant received proceeds of the settlement.[2]

In January 1991, Aetna sought, pursuant to G. L. c. 231A, a declaration that it had discharged its obligations to the defendants when it issued the settlement checks to the defendants' attorney and when those checks were negotiated.[3] In a separate action, Fennessey brought claims against Aetna for conversion under G. L. c. 106, § 3-419, and Finn brought claims against Aetna for negligence. All of the matters were consolidated on cross motions for summary judgment. After a hearing, in May 1993, a Superior Court judge determined that Aetna had discharged its obligations to the defendants. From adverse decisions on these motions, both defendants appeal. We affirm the judgment.

---

[2]Finn did receive from Seymour Goldwyn a total of $6,450 in eighteen payments made between January 1988 and October 1990. Finn understood that this amount was not going to be deducted from the ultimate settlement of her claim against Aetna.

[3]Goldwyn was also named as a defendant but failed to answer the complaint; default judgment was entered against him.

1. *Fennessey's conversion claim.* Under the Uniform Commercial Code, G. L. c. 106, a drawer[4] can be liable in conversion only if the instrument is a draft[5] payable by the drawer, and not a check[6] payable by a payor bank.[7] See *Great American Ins. Cos.* v. *American State Bank of Dickenson*, 385 N.W.2d 460, 464 (N.D. 1986); *Morris* v. *Ohio Cas. Ins. Co.*, 35 Ohio St. 3d 45, 50-51 (1988). The difference is considerable and determines the outcome of this case. So we must examine the situation in detail.

In all respects but one, the check appears to be in the usual form, drawn on an Aetna account at the Connecticut Bank and Trust Company. The purported ambiguity stems from the terms "From" and "Through," appearing under blank lines immediately to the left of the space provided for the numerical designation of the amount of the instrument.

Fennessey claims that, by virtue of these words, the instrument is transformed into a "payable through" draft and not a check.[8] If it is a draft "payable through," but not at, the Connecticut Bank and Trust Company, it is payable by Aetna, making Aetna subject to liability for conversion under G. L. c. 106, § 419(1) & (2).[9] See *Great American Ins. Cos.*

---

[4] " 'Drawer' means a person who signs or is identified in a draft as a person ordering payment." Uniform Commercial Code § 3-103(3), 2 U.L.A. 22 (1990).

[5] A draft is an unconditional order, signed by the drawer, to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by G. L. c. 106, §§ 3-101 et seq. G. L. c. 106 § 3-104.

[6] A check is a "draft drawn on a bank and payable on demand." G. L. c. 106, § 3-104(2)(*b*).

[7] " 'Payor bank' means a bank by which an item is payable as drawn or accepted." G. L. c. 106, § 4-105(*b*).

[8] According to G. L. c. 106, § 3-120, a ["payable through"] draft designates a "bank as a collecting bank to make presentment but does not of itself authorize the bank to pay the instrument." Thus, Aetna, not authorizing Connecticut Bank and Trust Company to pay the draft, would become the drawee, as well as the drawer. See *General Motors Acceptance Corp.* v. *General Accident Fire and Life Assur. Corp.*, 67 A.D. 2d 316, 317-319 (N.Y. App. Div. 1979) (1979); Reitman, 6 Banking Law § 112.02[3] (1994).

[9] General Laws c. 106, § 419(1), provides that "[a]n instrument is converted when . . . it is paid on a forged endorsement." Subsection (2) provides that the measure of liability is the face amount of the instrument.

v. *American State Bank of Dickenson*, 385 N.W.2d at 464; *Morris* v. *Ohio Cas. Ins. Co.*, 35 Ohio St. 3d at 50-51; 10 Am. Jur. 2d Banks § 495 (1963 & Supp. 1994).

The underlying purposes and policies of negotiable instruments law, as found in G. L. c. 106, §§ 3-101 et seq., are to "simplify, clarify and modernize the law governing commercial transactions [and] . . . to permit the continued expansion of commercial practices through custom, usage and agreement of the parties." G. L. c. 106, § 1-102(2)(*a*) & (*b*). These purposes and policies are best served when "[t]he status of a negotiable instrument [can] be determined from its face — from the language used or authorized to be used thereon by its drawer or maker." *Engine Parts, Inc.* v. *Citizens Bank of Clovis*, 92 N.M. 37, 40 (1978). Otherwise, those dealing in the commercial world would need to refer to extrinsic matters to understand and appreciate "the unique legal liabilities associated with [the] instrument[ ] and conduct their affairs accordingly." White & Summers, Uniform Commercial Code § 13-1, at 623 (3d ed. 1988). Transactional matters would be neither simple nor clear, nor would the continued expansion of commercial practices be so readily feasible.

We look to the face of the instrument in question to determine its nature and effect. "Where a draft is unclear as to whether a party named in a draft is a drawee, the court, if necessary, must resolve the ambiguity." *Engine Parts, Inc.* v. *Citizens Bank of Clovis, supra* at 40. The language on the draft, cited by the defendants — "From" and "Through" — in our opinion does not give rise to uncertainty concerning the instrument.

A "payable through" draft must be clearly indicated as such by the word(s) "through" or "payable through" appearing before the name of the collecting bank through which the draft is payable. See, e.g., *Harper* v. *K & W Trucking Co.*, 725 P.2d 1066, 1068 (Alaska 1986); *Messeroff* v. *Kantor*, 261 So. 2d 553, 555 (Fla. 1972); *Manufacturers Nat. Bank of Detroit* v. *Sutherland*, 16 Mich. App. 286, 290 (1969); *238 East 34th Street Corp.* v. *Continental Ins. Co.*, 75 Misc.

2d 493, 494 (1972); *General Motors Acceptance Corp.* v. *General Accident Fire and Life Assur. Corp.*, 67 A.D.2d 316, 318 (N.Y. App. Div. 1979); *Great American Ins. Cos.* v. *American State Bank of Dickenson*, 385 N.W.2d at 461, 464; *Morris* v. *Ohio Cas. Ins. Co.*, 35 Ohio St. 3d at 50-51.[10]

On the face of this instrument, the word "Through" is located to the left of the space reserved for the amount of the draft in the middle of the instrument. The name of the bank is on the bottom, under numerical coding information indicating the drawer's account number. Separating the name of the bank from the word "Through," in addition to the numerical coding, is a space after the word "For" (here filled in with the handwritten note "Full + Final BI Settlement"); the name to whose order the draft is to be paid; and the drawer's signature line. We conclude that nothing on the instrument indicates that it is drawn upon the payor bank. Aetna is not the drawee and cannot be liable in conversion. See and compare *Harper* v. *K & W Trucking Co.*, *supra*; *Messeroff* v. *Kantor*, *supra*; *Manufacturers Nat. Bank of Detroit* v. *Sutherland*, *supra*; *238 East 34th Street Corp.* v. *Continental Ins. Co.*, *supra*; *General Motors Acceptance Corp.* v. *General Accident Fire and Life Assur. Corp.*, *supra*; *Great American Ins. Cos.* v. *American State Bank of Dickenson*, *supra* at 464, 465; *Morris* v. *Ohio Cas. Ins. Co.*, *supra* at 51.

2. *Finn's negligence claim.* "Negligence is the doing or omission to do some act in violation of a legal duty." *Karlowski* v. *Kissock*, 275 Mass. 180, 183 (1931). Finn alleges that Aetna committed a breach of duty owed her by failing to issue the settlement check jointly to her and her attorney.

---

[10]See also Banks and Banking, 12 C.F.R. § 229.36(e) (1994) (Regulation CC) (effective February 1, 1991), which provides, in pertinent part, that in order for a bank to arrange for checks to be paid by it through another bank, "[t]he words 'payable through' followed by the name and location of the payable through bank" must be "printed conspicuously on the face of each check." The code also provides that "banks that use payable through arrangements must require their customers to use checks that meet the requirements of this provision."

She claims that custom and practice in the insurance industry to issue checks jointly in order to prevent possible fraud by attorneys gives rise to a duty to follow that custom and practice. Her argument is not persuasive.

Finn relies solely on custom and practice to establish that Aetna had a duty to draft settlement checks payable jointly to attorneys and insureds. She proffered, in support of her contention, affidavits to the effect that such is indeed the custom and practice of the insurance industry. This contention, for the purposes of the motion and this appeal, Aetna does not dispute. Although material, by itself, custom and practice cannot be dispositive as a matter of law to establish a duty to act in a certain way. "The [plaintiff] was under no obligation to take active steps to protect the [defendant] against forgery or deceit by the [latter's] own counsel." *McNulty* v. *Aetna Life Ins. Co.*, 305 Mass. 89, 91 (1940). Industry custom and practice, even if proven, does not change this rule.[11]

An essential element of negligence is duty. Finn fails to allege facts that impose a duty upon Aetna to draft settlement checks payable jointly to attorneys and insureds. "This evidence furnished no basis for a finding that the [plaintiff] was negligent in the performance of any duty which it owed the [defendant]." *Ibid.* "There can be no negligence where there is no duty." *Karlowski* v. *Kissock, supra.*

3. *Discharge of Aetna's obligation.* The ultimate question, which forms the basis of this appeal, is whether Aetna discharged its contractual obligation to pay the settlement to the defendants when it issued and successfully delivered the $25,000 checks to the defendants' lawyer. As there is no basis for imposing liability upon Aetna in conversion, or under any theory of negligence, our determination is guided by common law agency principles. See *Terry* v. *Kemper Ins. Co.*, 390 Mass. 450, 453 (1983).

---

[11]Industry custom and practice is material in that it is persuasive evidence of the existence or creation of a duty, see *McNulty* v. *Aetna Life Ins. Co.*, 305 Mass. 89, 91 (1940), but custom and practice does not itself create a duty.

In determining that Aetna discharged its obligation to Finn even though Finn's lawyer forged the endorsement, the motion judge's reliance on *Terry* v. *Kemper Ins. Co., supra,* was well placed and dispositive. In *Terry,* the attorney engaged by the claimant was issued a check payable to him and the insured on which he endorsed his name, forged the insured's name and retained all the proceeds. There, the court embraced pre-Uniform Commercial Code agency principles and declared that "when the bank paid to the claimant's agent the full value of the check without notice of any impropriety, albeit on a forged endorsement, the drawer's liability to the claimant was discharged." *Id.* at 453, citing *Dewey* v. *Metropolitan Life Ins. Co.,* 256 Mass. 281 (1926). See *id.* at 454, quoting from Restatement (Second) of Agency § 178(2) (1958) ("If an agent who is authorized to receive a check payable to the principal as conditional payment forges the principal's endorsement to such a check, the maker is relieved of liability to the principal if the drawee bank pays the check and charges the amount to the maker"). See also *Navrides* v. *Zurich Ins. Co.,* 5 Cal. 3d 698, 711-712 (1971); *Liberty Mut. Ins. Co.* v. *Enjay Chem. Co.,* 316 A.2d 219, 224 (Del. Super. 1974); *Hutzler* v. *Hertz Corp.,* 39 N.Y.2d 209, 214-216 & n.2 (1976).

With respect to Fennessey, Aetna's obligation was discharged when it issued the check to Goldwyn, contractual agent for his client (by virtue of the contingent fee agreement). "[A]uthority to receive payment is inferred from authority to conduct a transaction if the receipt of payment is incidental to such a transaction, usually accompanies it, or is a reasonably necessary means for accomplishing it." *Pampegian* v. *Richmond,* 319 Mass. 216, 218 (1946). Restatement (Second) of Agency § 71 (1958). The receipt of payment usually accompanies the authority (pursuant to a contingent fee agreement and incidental to the lawyer-client relationship) to negotiate and settle a personal injury lawsuit. See *Pampegian* v. *Richmond, supra; Macklin* v. *Macklin,* 315 Mass. 451, 455-456 (1944). Cf. *McQuade* v. *Springfield Safe Deposit & Trust Co.,* 333 Mass. 229, 235-236 (1955).

Accordingly, entry of summary judgment in favor of the plaintiff, determining that its obligations to the defendants was discharged, was proper.

*Judgment affirmed.*