NATIONAL CITY BANK, DAYTON, Appellant,

v.

OHIO NATIONAL LIFE ASSURANCE CORPORATION, Appellee, et al.

[Cite as *Natl. City Bank, Dayton v. Ohio Natl. Life Assur. Corp.* (1996), 111 Ohio App.3d 387.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950779.

Decided May 29, 1996.

*James, Dulaney, Engel & Phillips, Andrew M. Engel* and *Thomas M. Phillips,* for appellant.

*Steven Trumbo,* for appellee.

HILDEBRANDT, Judge.

Appellant National City Bank, Dayton, filed a complaint against appellee Ohio National Life Assurance Corporation for conversion, alleging that appellee had paid a draft issued by appellee over the forged endorsement of appellant's branch office manager. Both parties filed motions for summary judgment and opposing memoranda, with appellant arguing that the allegedly forged instrument at issue was a draft and appellee arguing that it was a check. The trial court granted appellee's summary judgment motion, concluding that there were no genuine

issues of material fact as to the form of the instrument. Implicit in its decision was the denial of appellant's motion. The trial court also denied appellant's motion to amend its complaint to join Star Bank, N.A., the party that appellee alleged was the drawee of the instrument at issue. Appellant appeals both of the trial court's orders.

In its appeal, appellant raises three assignments of error, alleging that the trial court erred in (1) granting appellee's motion for summary judgment, (2) denying appellant's motion for summary judgment, and (3) denying appellant's motion to amend its complaint. Because the first two assignments of error are intertwined, we will address them together.

■ It is essential to our analysis to describe the instrument in dispute. Appellee's name is printed across the top of the instrument. Directly across and to the right are the numbers "06 204986." Directly below is the phrase "CHECK NUMBER." Below that is a blank rectangle with the phrase "PRESENT THROUGH" as part of the rectangle's border. In the middle of the instrument is the statement "Pay $4,922 DOLLARS AND 50 CENTS." Below and to the left are the words "TO THE ORDER OF" followed by the names of "Marcia Leigh Ferrito and First National Bank Dayton, OH," appellant's predecessor in interest. On the right side of the instrument, parallel to Ferrito's name and above the signature of a "Donald Zimmerman," is appellant's name. Across the bottom of the document are a series of encoded numbers, "06205951 042000013 865 215 8." Nowhere on the check is the designation "Star Bank," the entity that appellee claims is the drawee bank.

In its cross-motion and opposing memoranda appellant raised the same issue it raises now. Appellant argues that while the instrument is a draft, it is not a check because it fails to identify Star Bank with reasonable certainty, as required by R.C. 1303.01(A)(2). Appellant argues that the only person to pay identified with reasonable certainty on the instrument is appellee. Thus, since appellee is not a bank, the instrument is a draft indicating appellee as the drawee. In support of its summary judgment motion, appellant presented its first set of requests for admissions directed at appellee[1] and the affidavit of its branch

---

1. Appellant argued in the court below, as it does in its first assignment of error, that the requests for admissions that it instructed the clerk of the trial court to serve on appellee with its complaint were never answered, and that appellee's failure to timely respond constituted an admission that appellee issued draft 06 205951 and paid or authorized its agent to pay the draft upon presentment pursuant to Civ.R. 36(A). Appellant claims to have never received any requests for admissions addressed to it, but did acknowledge receipt of requests for admissions directed to another party in the case, which subsequently had a default judgment entered against it. The record contains the complaint with appellant's first set of requests for admissions directed to appellee attached. Appellee filed the set of requests for admissions

manager attesting that the signature on the instrument was not hers, and that it was not placed on the instrument with her knowledge or consent.

Appellee argued in its summary judgment motion that the instrument is a check drawn against Star Bank, which is identified by the numerals "865 215 8," its account number, imprinted on the bottom of the instrument. Appellee attached the affidavit of its vice-president of financial control, in which he attested that appellee does not issue drafts for policy value disbursement and that all such disbursements are done by checks drawn against a demand deposit account with Star Bank. It also submitted the affidavit of a Star Bank vice-president, which averred that appellee's account number 8652158 is owned and maintained by appellee, that it is a demand deposit account, and that Star Bank makes the final decision of payment on all checks presented for payment from the account. In its memorandum opposing appellant's motion, appellee further argued that the nine-digit routing number on the instrument, found at the bottom of the instrument and, in its fractional form, in the upper right corner, identified Star Bank as the payor or drawee of the instrument, thus demonstrating that it is a check. In support, appellee relied on Sections 4001–4010, Title 12, U.S. Code (the Federal Expedited Funds Availability Act), which promulgated rules regarding the assignment and use of routing numbers to paying banks. See Section 210.2, Title 12, C.F.R. (Regulation J) and Section 229, Title 12, C.F.R. (Regulation CC).

Both parties assert that the result of this case depends on whether the instrument at issue is a draft or a check. This is because a drawer can be liable for conversion only if the instrument is a draft payable by the drawer. R.C. 1303.55(A). See *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904. This court, however, has found no case law in Ohio or from other jurisdictions which specifically addresses the issue of whether a routing number on a document is sufficient to identify a bank as the drawee of a draft. Thus, we start our analysis with pertinent definitions contained in R.C. Chapter 1303,[2] Ohio's adoption of Article 3 of the Uniform Commercial Code.[3]

---

directed against the other party to demonstrate what it had received. There are no affidavits from either party concerning this issue.

**2.** We must also keep in mind that R.C. 1301.02(B)(1) and (2) set forth as the purposes of Ohio's Uniform Commercial Code "[t]o simplify, clarify, and modernize the law governing commercial transactions" and to "permit the continued expansion of commercial practices through custom, usage, and agreement of the parties."

**3.** Ohio did not adopt the revised U.C.C. Article 3 until August 19, 1994; thus, because the contested instrument was issued in 1992, we apply the prior version of the statute.

A draft is an order. Former R.C. 1303.03(B)(1). "An 'order' is a direction to pay and must be more than an authorization or request. It must identify the person to pay with reasonable certainty. It may be addressed to one or more such persons jointly or in the alternative but not in succession." Former R.C. 1303.01(A)(2). A check is a negotiable instrument "if it is a draft drawn on a bank and payable on demand." Former R.C. 1303.03(B)(2). Thus a draft, regardless of whether it is a check, must identify with reasonable certainty the drawee or the person to pay. The reason for this rule is to "enable the payee or holder to know upon whom he is to call for acceptance or payment." 11 American Jurisprudence 2d (1963) 152, Bills and Notes, Section 114. Likewise, as in this case, the rule also enables a payee to know potential responsible parties if it fails to receive what is due it. "The policy of the law in reference to negotiable paper requires that it shall tell its own story and have effect in the hands of innocent holders for value according to what appears upon it." 11 American Jurisprudence 2d (1963) 83, Bills and Notes, Section 57.

"The status of a negotiable instrument is to be determined by its face— from the language used or authorized to be used thereon by its drawer or maker * * *."[4] *Engine Parts, Inc. v. Citizen's Bank of Clovis* (1978), 92 N.M. 37, 40, 582 P.2d 809, 812. It is not what the drawer intended to put on the draft which controls its validity, but that which was "actually written there when he signed the instrument which controls the validity, the negotiability, and the character of the parties thereto as drawer, drawee and payee. The status of a party to the instrument as drawer, drawee, or payee is determined by the drawer when he executes a negotiable instrument which meets the required definition of such an instrument under the U.C.C." *Id.* "Parol evidence is not admissible to add a party to the instrument who does not appear upon its face. * * * Whoever takes negotiable paper enters into a contract with the parties who appear on the face of the instrument, and can look to no other persons for payment." *Bank v. Cook* (1882), 38 Ohio St. 442. If one could not depend on the face of the negotiable instrument to determine its nature and effect, those dealing in commercial matters would have "to refer to extrinsic matters to understand and appreciate 'the unique legal liabilities associated with [the] instrument[ ] and conduct their affairs accordingly,'" in violation of the purpose of the Uniform Commercial Code. *Aetna Cas. & Sur. Co. v. Fennessey* (1994), 37 Mass.App.Ct. 668, 671, 642 N.E.2d 1050, 1052, quoting White & Summers, Uniform Commercial Code (1988) 623, Section 13–1. "In a typical check, a bank's *printed name* on the instrument

---

4. "Language" is commonly understood as "words, their pronunciation, and the methods of combining them used and understood by a considerable community." Webster's New Collegiate Dictionary (1980) 641.

suffices to make it the drawee." (Emphasis added.) *Horney v. Covington Cty. Bank* (C.A.5, 1983), 716 F.2d 335, 338.

Although recognizing the uncertainty of ascertaining bank status from the face of a draft, one commentator has determined that the most commonly accepted means by which to designate the drawee of a draft is to name that party in the lower left corner of its face. Dow, Determining Bank Status in Article Four Check Collections (1987), 49 U.Pitt.L.Rev. 43. Courts have, however, determined a party to be the drawee when its name has appeared in other locations. *Id.* Nothing in the research conducted by this court has indicated that the drawee of a draft need not be designated *by name* on the draft or that the routing numbers referred to by appellee have replaced the naming of a drawee on the face of the draft. See *Northpark Natl. Bank v. Bankers Trust Co.* (1983), 572 F.Supp. 524 (in fraud case involving a Magnetic Ink Character Recognition routing number which did not correspond to the institution *identified on the face* of the fraudulent check as the drawee bank, the court allowed plaintiff, if it so desired, to amend its complaint to allege facts suggesting that the inconsistency should be regarded as indicating the probability of fraud.) Furthermore, Appendices C–4 through C–7 of Section 229, Title 12, C.F.R. (Regulation CC) depict examples of checks which contain the name and address of the bank in the left corner of the check as well as the routing number directly beneath in model disclosure forms, clauses and notices suggested to be provided to bank customers to facilitate compliance with the regulation, and which discuss the routing numbers.[5]

 "Bills and notes, or in modern terminology, drafts, checks, notes, and certificates of deposit, are, of course contracts. Accordingly, the fundamental rules governing contract law are applicable to the determination of the legal questions which arise over such instruments." 17 Ohio Jurisprudence 3d (1986) Negotiable Instruments and Other Commercial Paper, Section 2. When the language of a contract is clear and unambiguous, its interpretation is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. Parol evidence is admissible only

---

5. The Expedited Funds Availability Act "delegated to the Federal Reserve Board of Governors 'the responsibility to regulate * * * any aspect of the payment system, including the receipt, payment, collection, or clearing of checks.' The Federal Reserve Board responded by issuing Regulation 'CC,' which preempted a considerable part of Article 4, dealing with bank collections." Silber, Why the U.C.C. Should Not Subordinate Itself to Federal Authority: Imperfect Uniformity, Improper Delegation and Revised Section 3–102(c) (1994), 55 U.Pitt.L.Rev. 441, 443. Regulations J and CC "regulate the system of check collection, and the bank deposit and collection system which is the focus of Article 4. While the EFAA [Expedited Funds Availability Act] does not restrict its preemptive effect to any portion of the Code, neither does it implicate Article 3 extensively." *Id.* at 476. Thus, it would seem the Expedited Funds Availability Act and its regulations generally come into play only after the determination that a draft is a check.

to explain an ambiguity or uncertainty in the instrument. *Hosford v. Automatic Control Systems, Inc.* (1984), 14 Ohio App.3d 118, 119, 14 OBR 133, 133–134, 470 N.E.2d 263, 264–265.

We believe the instrument *on its face* is not ambiguous and that the routing number fails to identify Star Bank with reasonable certainty as the drawee of the instrument at issue. We find persuasive the reasoning of the California appellate court in *People v. Norwood* (1972), 26 Cal.App.3d 148, 154, 103 Cal.Rptr. 7, 11, wherein it explained:

"The only reference to a bank on the warrant in question is the esoteric symbol 16—66/1220; the denominator (routing symbol) indicating the Los Angeles Federal Reserve Bank by '1220' and the numerator (transit number) indicating that the bank is a Los Angeles bank by '16,' and the specific bank in Los Angeles by '66.' (See 2 Cal.Commercial Law (Cont.Ed.Bar 1964) Sec. 9.11, pp. 160–161.) Just as a serial number on a given check is not considered a part of the instrument in determining its legal nature, the routing and transit code numbers are not to be considered a part of the instrument in resolving its legal incidents. See Hart and Willier, Essential Attributes of Commercial Paper, 1 N.M.L.Rev. (1971) 479, 494." See, also, Hart and Willier, Commercial Paper under U.C.C. (1996), 2–45, Section 2.05[1].

We conclude that the trial court erred by granting appellee's summary judgment motion and by denying appellant's summary judgment motion. While we agree there is no genuine issue of material fact, we conclude that appellant, and not appellee, is entitled to summary judgment as a matter of law. From our review of the document, we find no ambiguity as to who is the drawee. The only party named on the draft with reasonable certainty is appellee.

Appellant's assignment of error concerning the denial of its motion to amend its complaint is subsumed in our determination of its first two assignments of error.[6]

Accordingly, the trial court's judgment is reversed and this cause is remanded with instructions to enter summary judgment in favor of appellant only on the issue of whether the instrument constitutes a draft. We further instruct the trial court to conduct further proceedings as necessary, including a determination of whether the draft contains a forged endorsement.

*Judgment reversed*
*and cause remanded.*

M.B. BETTMAN, P.J., and SUNDERMANN, J., concur.

---

**6.** We agree with appellee that although appellant presented an affidavit concerning the alleged forgery, the record fails to demonstrate that the trial court has made a finding of fact on whether the endorsement was a forgery.