FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 OCT 27 AM 9: 56

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | No. 70742-6-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KAVEN LIONEL HILL, | ) | |
| | ) | |
| Respondent. | ) | FILED: October 27, 2014 |
| | ) | |

DWYER, J. — Kaven Hill appeals from his conviction of forgery. He contends that (1) insufficient evidence supports his conviction, (2) he was entitled to have the jury instructed on the "rule of efficacy," and (3) his constitutional right to confront the witnesses against him was violated when the "money order" at issue, upon which the notations "Return Unpaid" and "Non-Treasury Item" appeared, was admitted into evidence.[1] Because Hill was entitled to have the jury instructed on "the rule of efficacy," we reverse the conviction and remand for a new trial.

I

Using his home computer, Hill created a "money order" that was drawn on the United States Treasury (the Treasury) and, by its terms, entitled a business of his to an amount in excess of $377,000.00. This "money order" possessed, in

---

[1] Hill raises essentially the same arguments in his statement of additional grounds. We accept or reject them for the reasons explained below.

pertinent part, the following characteristics:

- it read "Money Order" at the top, in the center;
- it listed "Kaven L. Hil" (sic) in the upper left hand corner;
- it read "Pay to the order of," followed by the name of a business owned by Hill;
- it was written in the amount of $377,986.00;
- it was signed by Hill;
- it read "Payable to the U.S. Treasury without recourse" below the signature line;
- there was an unusually long statement in the "memo" section; and
- there was a routing number and what appeared to be an account number at the bottom.

At trial, Hill testified that he had created the "money order" on his home computer following instructions that he had found on the Internet. He claimed that he had been attempting to lawfully access a limitless account in his name at the Treasury Department.

On August 17, 2012, Hill presented the "money order" for deposit in a newly-opened business account at Verity Credit Union. Because of irregularities on the face of the money order—including the misspelling of Hill's name, the excess verbiage, and the fact that it was written for hundreds of thousands of dollars, whereas money orders are usually capped at $1,000.00—Verity employees were suspicious of the "money order." The "money order" was nevertheless accepted for deposit and sent to the Treasury for processing. Despite being informed by the Verity branch manager that a hold would be placed on the funds deposited into Hill's account until the "money order" cleared, Hill called Verity later that day and attempted to convince an assistant manager

to release the funds to him.

After Hill deposited the "money order," Verity's fraud officer, Melissa Mutic, further investigated the item. She was able to verify that the routing number at the bottom of the check, "000000518," was an actual routing number for the Treasury. She testified that, if the "money order" had been accepted, it would have resulted in a transfer of money from the Treasury into Hill's account. Mutic also discovered videos on YouTube containing instructions on how to create the type of "money order" that had been presented by Hill.

The "money order" was eventually returned to Verity unpaid. It was stamped "Return Unpaid" and "Non-Treasury Item" on the front. Verity closed all of Hill's accounts and contacted law enforcement.

Thereafter, Hill was charged with one count of forgery. At trial, before jury selection, Hill sought to exclude the "money order" from being admitted into evidence with the notations on the front. Hill argued that the stamped statements were testimonial and, therefore, admitting the statements without testimony from a Treasury Department official violated his Sixth Amendment right to confront the witnesses against him. The trial court ruled that the "money order" was admissible notwithstanding the notations.

After the close of evidence, Hill proposed a jury instruction that provided the common law definition of the term "instrument." The trial court refused to give the proposed instruction.

The jury found Hill guilty as charged. Hill moved for arrest of judgment and dismissal, contending that the State failed to establish his guilt at trial. His

motion was denied. Hill was sentenced within the standard range, and now appeals.

II

Hill first contends that the evidence admitted at trial was insufficient to support his forgery conviction. He maintains that the State failed to prove that (1) he acted with intent to defraud, (2) he knew the instrument was forged, and (3) the "money order" had apparent legal efficacy. Hill's contention is unavailing.

The due process clauses of the federal and state constitutions require that the State prove every element of a crime beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences from that evidence. State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). Circumstantial evidence and direct evidence can be equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the jury on questions of conflicting testimony, credibility of witnesses,

and the persuasiveness of the evidence.  State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

"A person is guilty of forgery if, with intent to injure or defraud: . . . He or she possesses, utters, offers, disposes of, or puts off as true a written instrument which he or she knows to be forged."  RCW 9A.60.020(1)(b).  To convict Hill of forgery, the jury was required to find that each of the following elements of the crime was proved beyond a reasonable doubt:

> (1) That on or about the 17th of August 2012, the defendant possessed or offered or disposed of or put off as true a written instrument which had been falsely made, completed or altered;
> (2) That the defendant knew that the instrument had been falsely made, completed or altered;
> (3) That the defendant acted with intent to injure or defraud.

Jury Instruction 13.

Thus, in order to convict Hill as charged, the State had to prove that he acted with intent to injure or defraud.  Specific intent is intent "to produce a specific result, as opposed to intent to do the physical act that produces the result."  State v. Elmi, 166 Wn.2d 209, 215, 207 P.3d 439 (2009).  Specific intent cannot be presumed, but it can be inferred as a logical probability from all of the facts and circumstances.  State v. Pedro, 148 Wn. App. 932, 951, 201 P.3d 398 (2009).

Here, the evidence established that Hill created a homemade "money order" and, in an attempt to have his account credited with more than $377,000.00, presented it to Verity as a valid money order drawn on the Treasury.  These facts permit an inference to be drawn that Hill intended to

defraud either the credit union or the Treasury. The inference that Hill acted with the requisite intent is bolstered by evidence that Hill, despite being told by the Verity manager that a hold would be placed on the funds until the "money order" was verified, attempted to persuade an assistant manager to release the funds to him later the same day. Although Hill testified that he did not intend to injure or defraud anyone, the jury was not required to credit his testimony. Sufficient evidence was adduced by the State with regard to Hill's intent.

The State was also required to prove that Hill knew that the written instrument was forged. The jury was given the following instruction as to the knowledge requirement:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he or she is aware of that fact, circumstance or result. . . .

> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

Jury Instruction 12. Thus, the State may have established the knowledge element by proving either that Hill actually knew that the "money order" was forged or that, based on the information that he knew, a reasonable person in his situation would have believed that it was forged.

The "money order" presented by Hill purported to be drawn on the Treasury. By his own admission, however, Hill produced the "money order" on his home computer. Therefore, the evidence established that, although Hill presented the "money order" as drawn on the Treasury, Hill was aware that it

was not, in fact, issued by the Treasury. These circumstances give rise to an inference that Hill knew that the homemade "money order" was not a legal means of acquiring Treasury funds. Although Hill testified that he believed that the "money order" was a valid means of accessing the Treasury money, again, the jury was not required to credit this testimony. Sufficient evidence was adduced by the State with regard to Hill's knowledge.

Finally, the State had to prove that the item Hill presented to Verity was a "written instrument." The definition of "written instrument" includes "[a]ny paper, document, or other instrument." RCW 9A.60.010(7); Jury Instruction 6 (emphasis added). The criminal statute does not define "instrument." Our Supreme Court, however, has held that the relevant statute is supplemented by the common law definition of "instrument."[2] State v. Scoby, 117 Wn.2d 55, 57-58, 810 P.2d 1358, 815 P.2d 1362 (1991). "[U]nder the common law 'an instrument is something which, if genuine, may have legal effect or be the foundation of legal liability.'" Scoby, 117 Wn.2d at 57-58 (quoting State v. Scoby, 57 Wn. App. 809, 811, 790 P.2d 226 (1990)). Thus, in the context of the forgery statute, an "instrument" must be "'something, which, if genuine, may have legal

---

[2] Two cases describe in detail the common law history of the rule of efficacy and the development of the law since the enactment of the criminal code. See State v. Scoby, 117 Wn.2d 55, 57-58, 810 P.2d 1358, 815 P.2d 1362 (1991); State v. Smith, 72 Wn. App. 237, 239-43, 864 P.2d 406 (1993). As concluded in Scoby:

> [F]orgery requires the falsification of a paper, document or other instrument. The statute does not define the term "instrument", however. RCW 9A.04.060 states that the common law governing the commission of crimes supplements Washington penal statutes. Therefore, we look to the common law definition of the term "instrument" for guidance . . . .

117 Wn.2d at 57.

effect or be the foundation of legal liability."[3] Scoby, 117 Wn.2d at 57-58

(quoting Scoby, 57 Wn. App. at 811).

The criminal code does not provide a framework for evaluating the legal

efficacy of a purported financial instrument. However, such a framework does

exist in the Uniform Commercial Code (UCC).[4] Pursuant to the UCC,

"'Instrument' means a negotiable instrument." RCW 62A.3-104(b). Negotiable

instrument is defined as

> an unconditional promise or order to pay a fixed amount of money,
> with or without interest . . . if it:
>     (1) Is payable to bearer or to order at the time it is issued or
> first comes into possession of a holder;
>     (2) Is payable on demand or at a definite time; and
>     (3) Does not state any other undertaking or instruction by the
> person promising or ordering payment to do any act in addition to
> the payment of money.

RCW 62A.3-104(a). An order is a written instruction to pay money signed by the

person giving the instruction. RCW 62A.3-103(6). If an order does not state any

time of payment, it is "payable on demand." RCW 62A.3-108(a).

A check is one type of negotiable instrument. A check is a draft, or order,

that is payable on demand and drawn on a bank. RCW 62A.3-104(f). The

requirement that the instrument be "drawn on a bank" may be satisfied by a

routing number. As an official comment to the pertinent UCC provision explains,

---

[3] This has come to be referred to as the "rule of legal efficacy." Smith, 72 Wn. App. at 239.

[4] The practice of looking outside the criminal code to determine the legal efficacy of a written instrument is well-established. See, e.g., Scoby, 117 Wn.2d at 58 (citing the United States Code to determine the legal efficacy of a one dollar bill); Smith, 72 Wn. App. at 243 (citing the UCC to determine the legal efficacy of a check).

> The requirement that the instrument be "drawn on or payable at or through a bank" may be satisfied without words on the instrument that identify a bank as drawee or paying agent so long as the instrument bears an appropriate routing number that identifies a bank as paying agent.

RCW 62A.3-104 cmt. 4.[5],[6] An instrument may be a check even though it is described on its face by another term, such as "money order." RCW 62A.3-104(f).

Hill's "money order" satisfies all of the UCC requirements of a check. Preliminarily, the "money order" qualifies as a negotiable instrument. It was an unconditional order to pay ("pay to the order of") a fixed amount ($377,986.00). It was signed by Hill, in whose name the supposed account was allegedly kept. It did not state a time of payment and, thus, was payable on demand. It did not state any other undertaking or instruction. Moreover, the "money order" qualifies as a check because it included a routing number connected to the Treasury and was, therefore, drawn on a bank.

Viewed in the light most favorable to the State, sufficient evidence was adduced with regard to the legal efficacy of the "money order."

The evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Hill acted with intent to injure or defraud, that he knew the

---

[5] Hill cites to State v. Taes, 5 Wn.2d 51, 53,104 P.2d 751 (1940), for the proposition that an instrument is so incomplete so as to lack legal efficacy where it does not contain the name of the bank that is to pay the money. However, the "check" at issue in Taes lacked not only the name of any bank, but also any appropriate routing number, which would have identified the bank responsible for payment. See 5 Wn.2d at 53.

[6] Hill also cites two foreign authorities to the contrary: Nat'l City Bank, Dayton v. Ohio Nat'l Life Assurance Corp., 111 Ohio App. 3d 387, 392, 676 N.E.2d 536, 539 (1996), and People v. Norwood, 26 Cal. App. 3d 148, 154-55, 103 Cal. Rptr. 7 (1972). We consider the official comment to the Washington statute to be superior authority.

instrument was forged, and that the "money order" had apparent legal efficacy. Hill's insufficiency of the evidence claim fails.

III

Hill next contends that the trial court erred by refusing to give his proposed jury instruction on the rule of legal efficacy. Hill maintains that because his defense relied, in part, on his averment that the "money order" was not legally efficacious, the trial court erred by allowing the jury to resolve a question of fact— whether he "possessed or offered or disposed of or put off as true" an instrument[7]—without fully defining "instrument" for the jury.[8]  We agree.

The Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury, taken together, entitle a criminal defendant to a jury determination of guilt beyond a reasonable doubt as to every element of the charged crime.  Apprendi, 530 U.S. at 476-77; In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, §§ 3, 22.

When requested, "[t]rial courts must define technical words and expressions used in jury instructions, but need not define words and expressions

---

[7] Jury Instruction 13.

[8] Hill also contends that the trial court's refusal to instruct the jury as to legal efficacy violated his constitutional "right to present a defense." This claim is off the mark. "The constitutional requirement is only that the jury be instructed as to each element of the offense charged. . . . [F]ailure of the court in the case at bench to define further one of those elements is not within the ambit of the constitutional rule." State v. Scott, 110 Wn.2d 682, 689, 757 P.2d 492 (1988) (internal quotation marks omitted) (quoting State v. Ng, 110 Wn.2d 32, 44, 750 P.2d 632 (1988)). "Legal efficacy" is not an element of the offense. Rather, it is part of the definition of "instrument," which is an element or fact that must be found by the jury. See Jury Instruction 13. Therefore, assigning error to the trial court's refusal to properly define an element ("instrument") does not state a constitutional claim. State v. Brown, 132 Wn.2d 529, 612, 940 P.2d 546 (1997) ("failure to give a definitional instruction is not failure to instruct on an essential element").

- 10 -

that are of ordinary understanding or self-explanatory."[9] State v. Brown, 132 Wn.2d 529, 611-12, 940 P.2d 546 (1997). A term is "technical" when it has a meaning that differs from common usage. Brown, 132 Wn.2d at 611. A request must be made; thus, "'[n]o error can be predicated on the failure of the trial court to give an instruction when no request for such an instruction was ever made.'" State v. Scott, 110 Wn.2d 682, 686, 757 P.2d 492 (1988) (quoting State v. Kroll, 87 Wn.2d 829, 843, 558 P.2d 173 (1976)). To assert such a claim of error on appeal, a defendant must "propose a defining instruction at trial." Scott, 110 Wn.2d at 691. Here, Hill did so.

We review a trial court's refusal to give a requested jury instruction de novo where the refusal is based on a ruling of law. State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998). The trial court's refusal to give the requested instruction in this case was based on a ruling of law—namely, the incorrect assertion that legal efficacy was an issue for the judge and not the jury. Therefore, our review is de novo.

The common law definition of instrument supplements the statutory definition of written instrument. Moreover, the common law meaning of instrument—"'something, which, if genuine, may have legal effect or be the foundation of legal liability,'" Scoby, 117 Wn.2d at 57-58 (quoting Scoby, 57 Wn. App. at 811)—differs from the word's common usage. Therefore, "instrument," as used in the to-convict instruction, is a technical term. There is no dispute that

---

[9] This is the "technical term rule." See, e.g., In re Det. of Pouncy, 168 Wn.2d 382, 390, 395, 229 P.3d 678 (2010) (Madsen, C.J., concurring and dissenting) (referring at length to the rule), and Scott, 110 Wn.2d at 692 (referring to the rule).

Hill requested an instruction on the common law definition of instrument. It follows that Hill was entitled to have the jury instructed on this definition.[10]

The failure to instruct on the definition of a technical term may be harmless error. State v. Flora, 160 Wn. App. 549, 554, 249 P.3d 188 (2011). "A harmless error is an error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case." State v. Britton, 27 Wn.2d 336, 341, 178 P.2d 341 (1947).

Here, the trial court's error was not harmless. Had the jury been informed of the doctrine of legal efficacy, it may have concluded that the State had not proved beyond a reasonable doubt that the purported money order was legally efficacious. The jury could have concluded as such because the "money order" was lacking some typically-expected features while others that were present were incoherent. For example, the money order did not appear to be drawn on any financial institution. It was payable to both Hill and the "U.S. Treasury." Moreover, it included a nonsensical "memo" stating that "acceptance of warehouse receipt it paying down continuance reoccurring balance to DBP, Inc." In short, parts of the money order did not make sense, and a rational trier of fact might have discredited the evidence presented as to its asserted legal effect.

Furthermore, the evidence of the many obvious errors on the face of the "money order" militates in favor and against both parties on different elements. Although this evidence supports the inferences of intent and knowledge in favor

---

[10] The State does not challenge the content of Hill's proposed instruction.

of the State and against Hill,[11] the evidence also weighs against finding that the "money order" had legal efficacy, which favors Hill and not the State. Yet, only the State was able to argue the effect of this evidence to the jury.[12] This imbalance is indicative of the prejudice to Hill that resulted from the trial court's refusal to instruct the jury on legal efficacy. Indeed, the court's decision not to instruct the jury on the rule of legal efficacy dispossessed Hill of the ability to argue to the jury that the "money order" was so obviously ineffective—especially in light of the evidence that it was "return[ed]" as a "non-treasury item"—that a reasonable doubt existed as to whether it was, in fact, an "instrument." The error was not trivial, formal, or academic. Accordingly, Hill's judgment and sentence must be reversed and remanded for a new trial. See Britton, 27 Wn.2d at 341-42.

IV

The State argues differently, contending that the question of the legal efficacy of the alleged written instrument is one for the trial court, not the jury. This contention is based on an assertion that legal efficacy is neither an explicit nor an implied element of the crime of forgery—a proposition with which we do

---

[11] See, infra, section II.

[12] For example, during the State's rebuttal closing argument, the prosecutor argued: "Defense counsel tried to address three different areas that she believed affected this. . . . So, one, not legally effective. You can look through the instructions all day. I didn't see anything in there addressing that."

Moreover, in its merits briefing to this court, the State argued the following with regard to the sufficiency of the evidence on the knowledge element: "The money order in this case was so obviously fake that, even if Hill hadn't actually created the document himself, a reasonable person in Hill's situation would have known that the money order was a forgery."

not disagree. Legal efficacy is neither an element nor an implied element of forgery.

In fact, the element at issue is that Hill possessed or put off as true a written instrument. To be an instrument, a writing must be found to have legal efficacy. Thus, while legal efficacy is not a separate element of the offense of forgery, it is a definitional aspect of "instrument," which must be proved to the jury beyond a reasonable doubt.

The State's assertion that the question of the legal efficacy of the "money order" was properly decided by the trial judge is premised upon State v. Miller, 156 Wn.2d 23, 123 P.3d 827 (2005). In Miller, our Supreme Court held that the existence of a domestic violence no-contact order is an element of the crime of violating such an order. 156 Wn.2d at 24. It also held that the validity of such an order is not an element but, rather, a question of law appropriately within the province of the trial court to decide as part of the court's "gate-keeping function."[13] Miller, 156 Wn.2d at 24. The State contends that this gate-keeping function extends to determining the legal efficacy of a written instrument in a forgery prosecution.

The legal efficacy of an alleged written instrument is distinguishable from the validity of a domestic violence no-contact order. Prior authority establishes that the question of whether the "money order" was legally efficacious was for the

---

[13] The Miller court was not presented with any indication that the validity of a no-contact order was intended to be an element of the crime. 156 Wn.2d at 28. However, the court noted that, if the validity of the order were an element of the crime, it would be required to be decided by a jury as a matter of fact. Miller, 156 Wn.2d at 24.

trier of fact to determine because it was part and parcel of the trier of fact's inquiry into whether an instrument was proved to exist. This conclusion necessarily follows from State v. Smith, 72 Wn. App. 237, 864 P.2d 406 (1993). In Smith, the defendant challenged the sufficiency of the evidence to support his forgery conviction. 72 Wn. App. at 239. As herein, Smith argued that the written instrument at issue—which, as here, was a check—was not legally efficacious. Smith, 72 Wn. App. at 239. In reversing Smith's forgery conviction, the appellate court concluded that the written instrument at issue did not meet the common law definition of instrument and was, accordingly, "insufficient to support a conviction for forgery." Smith, 72 Wn. App. at 243; accord Scoby, 117 Wn.2d at 63 (holding that paper currency is a written instrument for purposes of the statutory definition of forgery, and, therefore, the actions proved by the State—that the defendant passed an altered $1 bill—constituted the crime of forgery); see also State v. Aitken, 79 Wn. App. 890, 892-95, 905 P.2d 1235 (1995) (holding that a bank withdrawal slip was a "written instrument" within the meaning of the forgery statute and upholding the defendant's forgery conviction as against an evidentiary sufficiency challenge, where the evidence was that the defendant signed a false name to a bank withdrawal slip).

There is nothing in Miller that purports to change the effect of Smith or Scoby and, in view of our decision in State v. Green, 157 Wn. App. 833, 845-46, 239 P.3d 1130 (2010)—which cabined the application of Miller to judicial orders—Smith and Scoby guide our analysis.

In Green, we were faced with a similar argument from the State urging us to expand the trial court's gate-keeping function beyond that described in Miller. In declining the invitation, we held that the lawfulness of a trespass notice must be proved beyond a reasonable doubt in a criminal trespass prosecution arising from an alleged violation of that notice. Green, 157 Wn. App. at 850-51. We distinguished the trespass notice from a prior court order, noting that the trespass notice was not issued by a court based upon facts found at a proceeding with due process protections. As was the case with the trespass notice in Green, the "money order" herein is not a court order and its creation was not the result of processes imbued with the protections of due process. Our holding in Green forecloses the State's proposed extension of Miller.

Here, the jury was required to determine whether Hill possessed, offered, disposed of or put off as true a written instrument. This was a factual question. To be an instrument, a writing must have legal efficacy. Scoby, 117 Wn.2d at 57-58; Smith, 72 Wn. App. at 243. Thus, because Hill requested such an instruction, it was incumbent upon the trial court to fully instruct the jury on the meaning of instrument. Nothing in Miller alters this conclusion.

V

Hill next contends that the admission into evidence of the "money order" bearing the notations stating "Return Unpaid" and "Non-Treasury Item" violated

his federal constitutional right to confront the witnesses against him.[14]  U.S. CONST. amend. VI.  This is so, he asserts, because the two notations are testimonial statements.  We disagree.

When an out of court testimonial statement is offered against a defendant at trial, the confrontation clause requires that the defendant be given the opportunity to confront and cross-examine the person who made the statement.  Crawford v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).  The only exception to this guarantee is when both the witness is not available and there was a prior opportunity for cross-examination.  Crawford, 541 U.S. at 59; United States v. Marguet-Pillado, 560 F.3d 1078, 1085 (9th Cir. 2009).  When the evidence is nontestimonial, however, confrontation is not necessarily required.  Marguet-Pillado, 560 F.3d at 1085.

No comprehensive definition of "testimonial" exists,[15] but an important factor is "'the declarant's awareness or expectation that his or her statements may later be used at a trial.'"  Marguet-Pillado, 560 F.3d at 1085 (quoting United States v. Larson, 460 F.3d 1200, 1213 (9th Cir. 2006)).  Accordingly, "A document created *solely* for an 'evidentiary purpose,' . . . made in aid of a police investigation, ranks as testimonial."  Bullcoming v. New Mexico, __ U.S. __, 131 S. Ct. 2705, 2717, 180 L.Ed.2d 610 (2011) (emphasis added) (quoting Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527, 2532, 174 L. Ed. 2d 314

---

[14] Hill does not make an independent argument premised upon article 1, section 22 of the Washington Constitution. In any event, "[n]othing about the unique language of article 1, section 22 compels a particular result here." State v. Lui, 179 Wn.2d 457, 469, 315 P.3d 493 (2014).

[15] "We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'" Crawford, 541 U.S. at 68.

(2009)); see also State v. Jasper, 174 Wn.2d 96, 115, 271 P.3d 876 (2012) (certifications attesting to the existence or nonexistence of public records that "were created, and in fact used, for *the sole purpose* of establishing critical facts at trial" were testimonial (emphasis added)).

However, a document or record is deemed nontestimonial when it is the product of "'a routine, objective[] cataloging'" of facts that is not undertaken for an evidentiary purpose. United States v. Berry, 683 F.3d 1015, 1022 (9th Cir. 2012) (quoting Marquet-Pillado, 560 F.3d at 1085). Thus, "[b]usiness and public records are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."[16] Melendez-Diaz, 557 U.S. at 324; see also United States v. Bahena–Cardenas, 411 F.3d 1067, 1075 (9th Cir. 2005) (a warrant of deportation—including a notation on the warrant that the alien had been removed—was nontestimonial because it was a "routine, objective, cataloging of an unambiguous factual matter").

The notations on the "money order" were not made in preparation for criminal prosecution. Indeed, uncontroverted witness testimony established that the stamp was placed on the instrument as part of the normal procedure by which all checks and money orders are processed through the Federal Reserve.

---

[16] Hill proposes a different line of inquiry. He asserts that a business record must be deemed testimonial if—at the time of its creation—its creator could have speculated that it might be used for an evidentiary purpose at some later date. We decline to adopt Hill's approach. Rather, based on the authority set forth herein, we undertake a far more grounded inquiry, examining the primary purpose for which a document or record was created and deeming it testimonial if it was created for an evidentiary purpose.

A stamp of some type is placed on any check or money order that is rejected. Because the stamp on the "money order" was not testimonial, the confrontation clause was not violated when the trial court admitted the "money order" into evidence.

Reversed and remanded for a new trial.

We concur: