[No. 57269-1.   En Banc.   May 30, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. BARRY
D. SCOBY, *Petitioner.*

*John D. Knodell, Jr.,* for petitioner.

*John D. Knodell III, Prosecuting Attorney,* and *Mary Ann Brady* and *Stephen J. Hallstrom, Deputies,* for respondent.

GUY, J. — Barry Scoby was convicted of forgery after he used a $1 bill with the corners of a $20 bill pasted onto it to buy some gasoline. He appeals his conviction, alleging that his conduct does not fall within the statutory definition of forgery, and that even if it does, the evidence was insufficient to establish that he passed the $1 bill knowing that it was altered. We affirm Scoby's conviction.

## FACTS

On November 28, 1987, Scoby purchased $2 worth of gasoline at the Airway Deli Mart in Moses Lake. To pay for the gas, he used a $20 bill, the corners of which had been cut or torn off. Scoby then asked the cashier for two $10 bills in exchange for what appeared to be another $20 bill. The cashier made the exchange. As Scoby was leaving, the cashier realized that the bill was actually a $1 bill with the corners of a $20 bill pasted onto it. The cashier then wrote down Scoby's license number and called the police.

Scoby was apprehended and charged with forgery committed by altering a written instrument or putting off as

true an altered written instrument. At trial, he denied altering the $1 bill and testified that he was unaware it had been altered. He also moved to dismiss the charges, arguing that a $1 bill is not a "written instrument" for purposes of the forgery statute. The court denied the motions, and the jury found Scoby guilty as charged. The Court of Appeals affirmed. *State v. Scoby*, 57 Wn. App. 809, 790 P.2d 226 (1990). We granted discretionary review and now affirm the Court of Appeals.

ANALYSIS

I

Scoby argues that a $1 bill is not a written instrument and therefore his conduct in passing the altered $1 bill does not constitute forgery. We disagree.

■■ The crime of forgery is defined in RCW 9A.60.020, which provides in pertinent part:

> (1) A person is guilty of forgery if, with intent to injure or defraud:
> (a) He falsely makes, completes, or alters a written instrument or;
> (b) He possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged.

The term "written instrument" is defined as follows:

> "Written instrument" means: (a) Any paper, document, or other instrument containing written or printed matter or its equivalent; or (b) any access device, as defined in RCW 9A-.56.010(3), token, stamp, seal, badge, trademark, or other evidence or symbol of value, right, privilege, or identification[.]

RCW 9A.60.010(1). Thus, forgery requires the falsification of a paper, document or *other instrument*. The statute does not define the term "instrument", however. RCW 9A.04.060 states that the common law governing the commission of crimes supplements Washington penal statutes. Therefore, we look to the common law definition of the term "instrument" for guidance as to whether a $1 bill qualifies as an instrument for purposes of the statute.

As the Court of Appeals explained, under the common law "an instrument is something which, if genuine, may

have legal effect or be the foundation of legal liability."
*Scoby*, 57 Wn. App. at 811 (citing *State v. LaRue*, 5 Wn.
App. 299, 302, 487 P.2d 255, 65 A.L.R.3d 1299 (1971));
*accord, State v. Haislip*, 77 Wn.2d 838, 842, 467 P.2d 284
(1970). A $1 bill is a Federal Reserve Note, and as such it is
an obligation of the United States that must be redeemed
on demand.[1] Because it has legal efficacy, a $1 bill qualifies
as an "instrument" under the common law definition, as the
Court of Appeals correctly concluded. *Scoby*, at 812. Conse-
quently, a $1 bill is a written instrument for purposes of the
statutory definition of forgery in RCW 9A.60.020.

We further note that under federal law,

> [w]hoever so places or connects together different parts of two
> or more notes, bills, or other genuine instruments issued
> under the authority of the United States, or by any foreign
> government, or corporation, as to produce one instrument,
> with intent to defraud, shall be guilty of forgery in the same
> manner as if the parts so put together were falsely made or
> forged, and shall be fined not more than $1,000 or imprisoned
> not more than five years, or both.

18 U.S.C. § 484 (1988). This statute explicitly provides that
whoever connects together different parts of two notes so as
to produce one "instrument", with intent to defraud, is
guilty of forgery. Thus, under the federal statute, a note is
an "instrument", and connecting the corners of a $20 bill to
a $1 bill with intent to defraud is forgery.

Scoby argues that the legislative history of RCW 9A.60-
.010 and .020 requires a different result. He points out that
the Legislature enacted RCW 9A.60.010(1) and .020 in 1975
to supplant former RCW 9.44.010 and .020. The prior defi-
nition prohibited the forgery of "any writing or instru-
ment by which any claim, privilege, right, obligation or
authority . . . is or purports to be . . . evidenced, created . . .
or affected". Laws of 1909, ch. 249, § 331, p. 990 (codified as

---

[1]Under 12 U.S.C. § 411 (1988), Federal Reserve Notes "shall be obligations of
the United States and shall be receivable by all national and member banks and
Federal reserve banks . . .. They shall be redeemed in lawful money on demand
at the Treasury Department of the United States".

former RCW 9.44.020). In separate clauses, the statute also prohibited the forgery of a wide variety of other items, including "any coin or money". Laws of 1909, ch. 249, § 331, p. 990 (codified as former RCW 9.44.020). The previous statutes defined "written instrument" as an instrument "intended to bind an individual, partnership, corporation or association or an officer thereof." Laws of 1909, ch. 249, § 338, p. 993 (codified as former RCW 9.44.010). Scoby argues that under these former statutes, the term "written instrument" did not apply to money. He concludes that since there is no evidence the 1975 Legislature intended to change the law on this matter when it enacted RCW 9A.60.010 and .020, the term "written instrument" as defined in current RCW 9A.60.010 also does not include money.

■ The principal weakness in Scoby's argument is the premise that, in changing the forgery statute, the Legislature did not intend any change in the law regarding whether money is a written instrument for purposes of defining forgery. The previous forgery statute prohibited the forgery of "any writing or instrument" in a separate clause from that in which it prohibited the forgery of a wide variety of other items, including: (1) a request for the payment of money or property; (2) the identification of any person; (3) a public record; (4) an entry in a public or private account; (5) a court judgment, order, or pleading; (6) an official report of a public officer; (7) the draft of a bill presented to the Legislature; (8) the seal of any public officer; and (9) coins or money. Laws of 1909, ch. 249, § 331, p. 990 (former RCW 9.44.020). This use of different clauses to prohibit the forgery of "any writing or instrument" and the forgery of other items indicates that under the previous statute the meaning of "writing or instrument" did not include those other items. Under the present forgery statute, on the other hand, the list of items susceptible to forgery is gone; instead, what is prohibited is simply the forgery of a "written instrument". If the meaning of "written

instrument" in the present statute were as narrowly defined as Scoby urges, then neither money, public records, court orders, nor any other item listed in the previous statute would be forgeable. There is no evidence the Legislature intended so drastic a change in the law. Rather, we believe the change in statutory language reflects the Legislature's intention that those other items, including money, be treated as written instruments for purposes of forgery. Accordingly, we hold that the meaning of "written instrument" in the present statute encompasses the full range of items in the previous statute, including currency.

## II

Scoby also contends that his conduct falls outside the statutory definition of forgery because it constituted a mere false representation of fact, which alone is not forgery. He asserts that if he committed any crime on November 28, 1987, it was theft by deception.[2] Scoby relies on *State v. Mark*, 94 Wn.2d 520, 618 P.2d 73 (1980) and *State v. Marshall*, 25 Wn. App. 240, 606 P.2d 278 (1980), which both involved abuse of an otherwise authorized practice among pharmacists. Under that practice, pharmacists would obtain reimbursement for medication provided to Medicaid recipients by signing and submitting claim forms representing that medication had been prescribed by a physician and delivered to a patient. In these cases, however, the pharmacists submitted claim forms for medication neither prescribed nor delivered. Thus, the forms were exactly what they purported to be — claim forms containing a genuine pharmacist's signature — but the forms misrepresented the facts. Both cases held that there was no forgery. *Mark*, at 523; *Marshall*, at 241-42. In *Marshall*, the court explained that mere misrepresentation of facts by an item otherwise genuine in its execution does not constitute forgery. *Marshall*, at 241.

---

[2]The definition of "theft" includes: "By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services". RCW 9A.56.020(1)(b).

Scoby's reliance upon *Mark* and *Marshall* is misplaced. The claim forms at issue in those cases were genuine and unaltered, and the pharmacists' signatures were genuine. The forms and the signatures on them were thus exactly what they purported to be. Here, on the contrary, the bill Scoby handed the cashier in exchange for two $10 bills was not a genuine $20 bill; it was a $1 bill altered to appear to be a $20 bill. Therefore, *Mark* and *Marshall* are factually distinguishable from the present case. As for Scoby's argument that his conduct, if criminal, was theft by deception rather than forgery, the prosecution had the discretion to decide which crime to charge. *See State v. Meyer*, 26 Wn. App. 119, 123-24, 613 P.2d 132 (1980) (prosecution had discretion to charge theft of property or services of another rather than unlawful issuance of a bank check).

## III

Finally, Scoby argues that the evidence presented at his trial was insufficient to prove he altered the $1 bill or knew it was altered. He asserts that the only evidence suggesting he knew the $1 bill was altered was that he gave it to the cashier. This evidence alone, he claims, is insufficient. He also asserts that if he had known of the alteration, he "would have boasted" about it to his female companion, but she knew nothing of the alteration. Scoby finally argues that the alterations were not so obvious that anyone possessing the $1 bill would notice them. He points out that the cashier did not immediately realize the bill was altered.

■ ■ When reviewing the sufficiency of evidence in a criminal prosecution, this court views the evidence in the light most favorable to the prosecution. *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983). "[T]he relevant inquiry is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of [the crime] beyond a reasonable doubt'." *State v. Baeza*, at 490 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)). In addition, although possession alone is

not sufficient to prove guilty knowledge, possession together with slight corroborating evidence of knowledge may be sufficient. *State v. Douglas*, 71 Wn.2d 303, 428 P.2d 535 (1967); *State v. Ladely*, 82 Wn.2d 172, 175, 509 P.2d 658 (1973).

Scoby was convicted under subsection (1)(b) of RCW 9A-.60.020, which states that a person is guilty of forgery if "[h]e possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged." He was not convicted under subsection (1)(a) of RCW 9A.60.020, which prohibits altering written instruments. Our inquiry therefore focuses on whether there is enough corroborating evidence to establish that the jury could have found beyond a reasonable doubt that Scoby knew of the alteration.

The corroborating evidence consists of two facts. First, the alteration appears to have been obvious. Although the cashier did not immediately realize the $1 bill had been altered, her testimony suggests that this is true only because she took it from Scoby without looking directly at it. Once she did look directly at it, she saw the alteration immediately: "I saw George Washington's face and $20.00 corners. I knew it wasn't right in a second." Report of Proceedings, at 17. In any case, the jury had the opportunity to observe the altered $1 bill, and to determine whether the alteration was obvious enough that beyond a reasonable doubt Scoby knew of the alteration.

Second, according to the prosecution, the corners torn off the $20 bill were identical to the corners pasted onto the altered $1 bill. If the corners were identical, then it is unlikely that Scoby possessed both the altered $1 and the torn $20 without being aware of the alteration. The prosecution argued this matter before the court outside the presence of the jury, but both bills were subsequently admitted as evidence and were present in the jury room when the jury deliberated. Therefore, in its deliberations the jury could have reached the conclusion that the corners were

identical; if it did, it might have reasonably relied on this to infer that Scoby knew of the alteration.

In sum, the jury might have reasonably inferred that the alteration of the $1 bill was so obvious, and the match between the corners on the altered $1 bill and the torn $20 bill so striking, that beyond a reasonable doubt Scoby knew he was passing an altered $1 bill. We decline to overturn the jury's determination.

### CONCLUSION

We hold that money is a "written instrument" for purposes of the statutory definition of forgery, and that Scoby's passing the altered $1 bill constituted the crime of forgery. We also hold that the evidence submitted at trial was sufficient to prove that Scoby knew the $1 bill had been altered. Accordingly, we affirm.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and JOHNSON, JJ., concur.

Reconsideration denied July 8, 1991.