FILED
COURT OF APPEALS
DIVISION II

2013 OCT 29 AM 9: 47

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>v.<br><br>TERRY EUGENE GAINES,<br><br>               Appellant. | No. 43170-0-II<br><br><br><br>UNPUBLISHED OPINION |

QUINN-BRINTNALL, P.J. — A jury convicted Terry E. Gaines of multiple counts of first degree trafficking in stolen property and money laundering for selling stolen sticks of Xerox brand ink on eBay. Gaines appeals, arguing that (1) there was not probable cause to support the search warrant and (2) there was insufficient evidence to support the jury's verdicts finding him guilty of first degree trafficking in stolen property and money laundering because the State did not prove he knew the ink sticks were stolen. Both of Gaines's arguments fail, and we affirm.

## FACTS

In early 2008, Keith Cutri, the manager of the North American Brand Protection Group at Xerox, began investigating reports of employees stealing Xerox printer ink. As part of the investigation, Cutri compiled a list of "high volume sellers on eBay that are selling well below

the normally expected price." 5 Report of Proceedings (RP) at 200. Gaines was identified as one of the sellers on Cutri's list of "targets." 5 RP at 200. Cutri monitored Gaines's eBay sales from 2008 through 2009 and found Gaines continued to consistently sell large amounts of ink at well below retail prices. During his investigation, Cutri performed three covert buys from Gaines.

After performing the covert buys, Cutri contacted Detective Scott Shafner of the Tacoma Police Department to file a complaint. Cutri requested that Shafner follow up with the investigation and determine whether there was a reason to believe that Gaines was selling stolen ink. Shafner confirmed Gaines's identity and address, then went to speak to Gaines at his home. Gaines voluntarily told Shafner that he was selling ink on eBay and showed Shafner three bins full of ink. Shafner asked Gaines where he got the ink from and Gaines told Shafner he thought he got "it from an online auction site like Craigslist" but could not specifically remember. 6 RP at 341. When Shafner pointed out that Craigslist was not an auction site, Gaines stated he got it from an online seller called "angeleyes" but he could not give Shafner any additional information about where he got the ink. 6 RP at 341.

After the initial contact with Gaines, Detective Shafner obtained a search warrant for Gaines's house. Shafner seized the ink that Gaines had at his house. Shafner also executed a search warrant for Gaines's eBay and Paypal records, as well as search warrants for Gaines's financial records. Shafner also obtained a second search warrant for Gaines's house. In total, Shafner obtained and executed 13 search warrants related to the Gaines investigation. Gaines was arrested on January 28, 2010.

The State charged Gaines with 8 counts of money laundering and 34 counts of first degree trafficking in stolen property. Gaines filed a motion to suppress evidence, arguing that the first search warrant was not supported by probable cause. The trial court denied Gaines's motion. Gaines also filed a *Knapstad*[1] motion which the trial court also denied.

At trial, Cutri and Detective Shafner testified to the facts above. The State also introduced evidence about how Gaines obtained the ink. Gaines's daughter, Alexis Gaines, testified that Tom Long, a Xerox employee, was a close friend of Gaines and that Gaines got the ink from Long. Gaines's son, Devon Gaines, also testified that Long was close friends with Gaines and that Gaines got the ink from Long. Brenda Diettrich dated Gaines for approximately a year and a half during the time he was selling ink on eBay. Diettrich testified that at one time Gaines told her that the ink was stored in a barn in Portland and he went to pick it up when he needed more or he bought it off-line or through on-line auctions. Gaines also told her that Long got the ink by dumpster diving at Xerox. Long was employed by Xerox and had access to the type of ink Gaines was selling on eBay. Kelly Timmins, a product operations manager for Xerox, testified that ink would be allowed off the production campus in very limited situations and in small quantities. Gaines testified that he got the ink from Long, and he admitted that he lied to Shafner when Shafner asked him where he got the ink.

The State's forensic accountant, William Omatis, reviewed the records from Gaines's eBay and Paypal accounts, and his financial records. Omatis determined that from June 8, 2005 to May 1, 2009, the total of Gaines's eBay and non-eBay ink sales was approximately $320,000.

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

Omatis also identified $563,193.40 of ink sales to a group of people in Yorba Linda, California. Omatis identified significant cash withdrawals from Gaines's Paypal and checking accounts. He also identified large mortgage payments, home remodeling costs, and extensive financial investments. In addition, Omatis was able to identify significant payments to or purchases made on behalf of Long.

The jury found Gaines guilty of all charges. The jury also found that the major economic offense aggravating factor applied to all charges. The trial court sentenced Gaines to an exceptional sentence of 108 months total confinement. The trial court also imposed legal financial obligations including $1.8 million dollars restitution to Xerox. Gaines timely appeals.

ANALYSIS

SEARCH WARRANT

A.    WRITTEN FINDINGS

Gaines argues that the trial court's ruling should be reversed because the trial court failed to issue written findings of fact and conclusions of law. Gaines relies on *State v. Head*, 136 Wn.2d 619, 622, 964 P.2d 1187 (1998), for the proposition that an oral ruling has no binding effect unless the trial court has issued a corresponding written order. But *Head* was addressing the requirements of CrR 6.1(d) which applies to bench trials, not suppression hearings. 136 Wn.2d at 622; *see also* CrR 6.1. Suppression hearings are governed by CrR 3.6, and under the plain language of CrR 3.6, written findings of fact and conclusions of law were not required because the trial court did not conduct an evidentiary hearing.

CrR 3.6 sets out the procedures the court is required to follow in a suppression hearing:

> (a) **Pleadings.** Motions to suppress physical, oral or identification evidence other than motion pursuant to rule 3.5, shall be in writing supported by an affidavit or document setting forth the facts the moving party anticipates will

4

be elicited at a hearing and a memorandum of authorities in support of the motion. Opposing counsel may be ordered to serve and file a memorandum of authorities in opposition to the motion. The court shall determine whether an evidentiary hearing is required based upon the moving papers. If the court determines that no evidentiary hearing is required, the court shall enter a written order setting forth its reasons.

> (b) **Hearing.** If an evidentiary hearing is conducted, at its conclusion the court shall enter written findings of fact and conclusions of law.

Here, the trial court issued a ruling stating that no evidentiary hearing was necessary because the challenge to the search warrant was based on a challenge to the probable cause affidavit and, therefore, the trial court could decide the issue on the pleadings, warrant, and probable cause statement alone. The trial court's ruling also set forth, in detail, the reasons for denying Gaines's motion to suppress evidence.

Under the plain language of CrR 3.6, written findings of fact and conclusions of law are required only if the trial court holds an evidentiary hearing; if the trial court determines that an evidentiary hearing is unnecessary, the trial court does not have to issue written findings of fact or conclusions of law so long as the reasons an evidentiary hearing is not necessary are set out in writing. Here, the trial court's written order sets out the reasons an evidentiary hearing is not necessary, therefore the trial court complied with the requirements of CrR 3.6 and Gaines's argument that the trial court's decision must be reversed because of the trial court's failure to issue written findings of fact and conclusions of law lacks merit.

B.  PROBABLE CAUSE

Gaines argues that the search warrant was not based on probable cause because the probable cause statement was based on "supposition not facts" which did not support the conclusion that "Gaines must be selling ink sticks that are stolen, and that Gaines must know they are stolen." Br. of Appellant at 14, 16. Gaines's argument implies that an officer must have

proof that a crime has been committed in order to obtain a search warrant, but that is not the proper standard for determining whether a warrant was properly supported by probable cause. The affidavit of probable cause was sufficient to support the issuance of a search warrant, and therefore the trial court did not err by denying Gaines's motion to suppress.

Generally, we review the issuance of a search warrant for an abuse of discretion. *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). The reviewing court gives great deference to the probable cause determination of the issuing judge or magistrate. *State v. Young*, 123 Wn.2d 173, 195, 867 P.2d 593 (1994). However, at a suppression hearing, the trial court's assessment of probable cause is a legal conclusion that we review de novo. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008).

Probable cause for a search warrant "requires a nexus between criminal activity and the item to be seized and between that item and the place to be searched." *Neth*, 165 Wn.2d at 183. There must be an adequate showing of "'circumstances going beyond suspicion and mere personal belief that criminal acts have taken place and that evidence thereof will be found in the premises to be searched.'" *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981) (quoting *State v. Patterson*, 83 Wn.2d 49, 58, 515 P.2d 496 (1973)). "General, exploratory searches are unreasonable, unauthorized, and invalid. . . . [G]eneralizations do not substitute for facts and investigation." *State v. Thein*, 138 Wn.2d 133, 149, 977 P.2d 582 (1999).

The affidavit for probable cause was based on the following facts:

1.  The corporate security manager of Xerox contacted Detective Shafner and reported that he believed Gaines was selling stolen ink sticks because he was selling large quantities of ink sticks on eBay for significantly below retail price.
2.  Two other sellers of Xerox ink sticks had been arrested for selling large amounts of stolen ink on eBay; Gaines was the next largest seller of the

same type of Xerox ink sticks on eBay. One of the arrests was the subject of a public press release.

3. Gaines voluntarily allowed Shafner into his home where Shafner observed approximately 500 ink sticks in Gaines's house. Gaines listed his home address as the address associated with his eBay account.

4. Gaines was reluctant to explain where he got the ink sticks he was selling or how much he paid for them.

Detective Shafner stated that based on the facts contained in the affidavit, he believed that Gaines was selling ink sticks that he knew were stolen and requested a search warrant to search Gaines's house for ink sticks, records related to the purchase and sale of the ink, computer records related to the purchase or sale of ink, and financial records.

Here, Detective Shafner referenced facts beyond mere suspicion and belief. He noted that other people who sold large quantities of Xerox ink on eBay for significantly less than the retail price had been selling stolen ink. This pattern supports the belief that Gaines was also selling stolen ink. Shafner also noted that there had been a public press release stating that one of the other large sellers of ink had been arrested for selling stolen ink, that Gaines could not say how he got the ink, and he could not say whether or how much he paid for the ink. These are specific facts that support the belief that Gaines knew the ink was stolen. Finally, Shafner had seen large amounts of ink sticks in Gaines's house and his home address was the address associated with his eBay account. Therefore, Shafner had reason to believe that Gaines's house would contain evidence that the ink was stolen and that there would be records establishing Gaines was selling the stolen ink.

Shafner's affidavit relied on specific facts that supported both his belief that Gaines was engaged in criminal activity, specifically trafficking in stolen property, and that evidence of that criminal activity would be found in Gaines's house. *Seagull*, 95 Wn.2d at 907. Accordingly,

probable cause supported the issuance of the search warrant and the trial court did not err by denying Gaines's motion to suppress evidence.

SUFFICIENCY OF THE EVIDENCE

Gaines argues that there is not sufficient evidence to support the jury's finding that he knew the ink sticks were stolen property. Therefore, he argues that the State failed to prove an essential element of first degree trafficking in stolen property; if there is insufficient evidence to support the jury's verdict for first degree trafficking in stolen property. And he argues that there is insufficient evidence to support the jury's verdict for money laundering because an essential element of money laundering is that the defendant knew that the financial transaction involved proceeds from first degree trafficking in stolen property.

Evidence is sufficient if, when viewed in the light most favorable to the jury's verdict, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Our role is not to reweigh the evidence or substitute our judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Instead, because the jurors observed the witnesses testify first hand, we defer to the jury's resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness and the appropriate weight to be given the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

The essential elements of first degree trafficking in stolen property are (1) the defendant trafficked in stolen property, (2) the defendant acted with the knowledge that the property had

8

been stolen, and (3) the acts occurred in Washington. RCW 9A.82.050. The essential elements of money laundering are (1) the defendant conducted a financial transaction, (2) the financial transaction involved the proceeds of the crime of first degree trafficking in stolen property, (3) the defendant knew the property was proceeds of first degree trafficking in stolen property, and (4) the acts occurred in Washington. RCW 9A.83.020.

A person acts knowingly or with knowledge when

(i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

(ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(b). And the jury was instructed that

[a] person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he or she is aware of that fact, circumstance or result. It is not necessary that the person know that the fact, circumstance or result is defined by law as being unlawful or an element of a crime.

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

When acting knowingly is required to establish an element of a crime, the element is also established if a person acts intentionally.

Clerk's Papers at 2768.

Possession of stolen property alone is not sufficient to prove the defendant knew the property was stolen. *State v. Scoby*, 117 Wn.2d 55, 61-62, 810 P.2d 1358, 815 P.2d 1362 (1991). However, possession of stolen property with slight corroborating evidence of knowledge can be sufficient. *Scoby*, 117 Wn.2d at 61-62. "[T]he giving of a false explanation or one that is improbable or is difficult to verify in addition to the possession is sufficient." *State v. Ladely*, 82 Wn.2d 172, 175-76, 509 P.2d 658 (1973) (citing *State v. Beck*, 4 Wn. App. 306, 480 P.2d 803

(1971); *State v. Hatch*, 4 Wn. App. 691, 483 P.2d 864 (1971); *State v. Douglas*, 71 Wn.2d 303, 428 P.2d 535 (1967)).

Here, the State presented sufficient evidence to prove that the ink was stolen because employees from Xerox testified that Long worked at the sole manufacturing plant for this type of ink, Long worked in a division that had unregulated access to the ink, and that Long did not have permission to take any ink off the manufacturing plant premises. The State also presented a significant amount of testimony establishing that Gaines obtained the ink from Long. Although the State must prove more than that Gaines was in possession of stolen property, the State also provided corroborating evidence of knowledge. *Scoby*, 117 Wn.2d at 61-62. Detective Shafner testified that Gaines lied to him about where he got the ink. Diettrich testified that Gaines told her several different stories about where he got the ink including a barn in Portland, a train wreck, and his friend dumpster diving. By presenting evidence that Gaines lied about where he got the ink and provided several improbable explanations about where he got the ink is sufficient corroborating evidence to support the jury's finding that Gaines knew the ink was stolen. *Ladely*, 82 Wn.2d at 175 (holding possession of a stolen item combined with a false or improbable explanation is sufficient evidence to prove "guilty knowledge on the part of the appellant, that the [item] in question was stolen property").

Gaines makes several arguments about why the State's evidence was not sufficient to support the jury's verdict. However, all of Gaines's arguments must fail because they require us to second guess the jury's decisions on credibility or substitute our judgment for that of the jury's when making reasonable inferences from the evidence. *See Green*, 94 Wn.2d at 221; *Walton*, 64 Wn. App. at 415-16. Accordingly, there was sufficient evidence to support the jury's verdicts finding Gaines guilty of trafficking in stolen property. Because there was sufficient evidence to

10

support the jury's verdicts on the trafficking charges, there was sufficient evidence to support the jury's verdicts on the money laundering charges as well and we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_QUINN-BRINTNALL, P.J._

QUINN-BRINTNALL, P.J.

We concur:

_PENOYAR, J._

PENOYAR, J.

_MAXA, J._

MAXA, J.