# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52775-8-II |
| Respondent, | |
| v. | |
| RANDALL CHARLES KING, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Randall King deposited two money orders and a check, which had been obviously altered with white out and scribbling and endorsed with King's name, at an automatic teller machine (ATM). He was subsequently convicted of three counts of forgery[1] following a bench trial. King appeals, arguing that the State provided insufficient evidence to support his three forgery convictions. Specifically, he argues that signing the instruments with his own name did not constitute forgery and that it is immaterial that the instruments were obviously altered. He also argues that the unsigned money order underlying count I lacked legal efficacy.

We agree that the State failed to produce sufficient evidence that the unsigned money order held legal efficacy as a written instrument, and we reverse that conviction. But we disagree with King's insufficiency claims as to the other two counts. Consequently, we reverse King's conviction on count I with prejudice, affirm King's convictions on counts II and III, and remand for resentencing.

---

[1] King was also convicted of one count of second degree theft, but he does not challenge that conviction on appeal.

FACTS

King had a personal checking account at Twin Star Credit Union. On January 19, 2018, King used an ATM to deposit a money order in the amount of $430.00 and immediately withdraw $400.00 in cash. Several items on the front of the money order had been scribbled out and "cash" written on the "pay to the order of" line. Ex.1, at 4. The signature line of the money order was blank. "Pay to the order of Randy King" was written on the back of the money order and was endorsed with King's signature.[2] Ex. 4. The following day, King used an ATM to deposit a second money order for $105.00 and withdraw $100.00 in cash. The "pay to the order of" line had been whited out, and King's signature was on the back.[3] Ex. 1, at 3. Two days later, King used an ATM to deposit a personal check in the amount of $595.56 and withdraw $500.00. The name next to "pay to the order of" line had been whited out and "David Ben" was written over the whiteout.[4] Ex. 1, at 5.

When the Twin Star operations department was verifying deposits, it observed that the money orders and check appeared altered. The fraud services supervisor identified King as the person making each deposit at the ATM by comparing photographs from the ATM to the photograph Twin Star had on file for King. After compiling all the relevant information, the fraud services supervisor contacted law enforcement.

The State charged King with three counts of forgery and one count of second degree theft. The case proceeded to a bench trial. At trial, witnesses testified to the facts stated above.

---

[2] This transaction formed the basis for count I.

[3] This transaction formed the basis for count II.

[4] This transaction formed the basis for count III.

Other than submitting exhibit 4, the State submitted no evidence of the legal efficacy of the $430.00 money order underlying count I.

King testified on his own behalf, explaining that he received the money orders from his friend, Roxanne Chipman. Chipman testified in King's defense, explaining that she had asked King to assist her by cashing the money orders. Chipman testified that she needed King to deposit the money orders because she did not have a bank account. Chipman maintained that she did not alter the money orders. King also testified that he deposited the check for a friend named China who did not have a bank account. King testified that he believed all the instruments were valid and that he did not alter or change them in any way other than to write his signature on the back.

The trial court found the testimonies of King and Chipman not credible. The trial court also entered the following findings of fact:

> 1.3 On 01-19-2018, the Defendant offered (deposited) at the Centralia, Lewis County branch of the credit union, an obviously altered money order with the stated amount of $430.00 printed on the paper instrument. (exhibit 1, page 4). He thereafter immediately withdrew $400 in cash.
>
> 1.4 On 01-20-2018, the Defendant offered (deposited) at the Centralia, Lewis County branch of the credit union an obviously altered money order with [sic] in the stated amount of $105.00. (exhibit 1, page 3). He thereafter immediately withdrew $100 in cash.
>
> 1.5 On 01-22-2018, the Defendant offered (deposited) at the Centralia, Lewis County branch of the credit union an obviously altered personal check with the stated amount of $595.56. (exhibit 1, page 5). He thereafter immediately withdrew $500 in cash.
>
> 1.6 The court finds the defendant knew he was depositing into the credit union forged documents. All three paper instruments were obviously altered to the point where a reasonable person would suspect their authenticity, and know they are forged.

3

1.7     The court further finds the defendant intended to defraud the credit union by cashing these three forged instruments through an ATM machine rather than going inside the credit union and asking a bank teller to verify the authenticity of the documents.

Clerk's Papers (CP) at 42-43.  The trial court made no findings as to the legal efficacy of the money order underlying count I.  The trial court concluded that King was guilty of all charges.

King appeals his forgery convictions.

ANALYSIS

King argues that the State provided insufficient evidence to support his three forgery convictions.  Specifically, he argues that signing the instruments with his own name did not constitute forgery and that the instruments were obviously altered is immaterial.  He also argues that the State failed to prove that the unsigned $430.00 money order underlying count I had legal efficacy.  We agree that the State failed to produce sufficient evidence that the unsigned $430.00 money order held legal efficacy as a written instrument and reverse that conviction.  But we disagree with his insufficiency claims as to the other two counts, and we affirm those convictions.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.  *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017).  Following a bench trial, we review a trial court's ruling to determine whether substantial evidence supports the trial court's contested findings of fact and whether the findings of fact support the conclusions of law.  *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014).  We treat findings of fact supported by substantial evidence and unchallenged findings of fact as

verities on appeal. *Homan*, 181 Wn.2d at 106. We review de novo challenges to the trial court's conclusions of law. *Homan*, 181 Wn.2d at 106.

In a sufficiency of the evidence claim, the defendant admits the truth of the evidence, and the court views the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Cardenas-Flores*, 189 Wn.2d at 265-66. Credibility determinations are made by the trier of fact and are not subject to review. *Cardenas-Flores*, 189 Wn.2d at 266. Circumstantial and direct evidence are equally reliable. *Cardenas-Flores*, 189 Wn.2d at 266.

## I. OBVIOUSLY ALTERED

RCW 9A.60.020(b) provides:

(1) A person is guilty of forgery if, with intent to injure or defraud:
  (a) He or she falsely makes, completes, or alters a written instrument or;
  (b) He or she possesses, utters, offers, disposes of, or puts off as true a written instrument which he or she knows to be forged.

As an initial matter, King assigns error to the trial court's finding of fact 1.6 and 1.7. But King makes no attempt to explain how the findings are not supported by substantial evidence.[5] King's actual argument appears to be that the trial court's findings do not support its conclusion that King committed the forgeries because a true signature does not constitute a forgery. King's argument fails.

King is correct that generally, "'forgery cannot be charged if the accused signs or uses his own true or actual name.'" *State v. Marshall*, 25 Wn. App. 240, 241, 606 P.2d 278 (1980) (quoting *State v. Lutes*, 38 Wn.2d 475, 480, 230 P.2d 786 (1951)). But here, the State argued

---

[5] King fails to provide sufficient argument in support of his assignments of error as required under RAP 10.3(a)(6). For this reason, we do not address this issue further. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

that King was guilty of forgery under RCW 9A.60.020(b) specifically. As a result, the State did not need to prove that King actually made, completed, or altered the written instruments, only that King possessed, uttered, offered, disposed of, or put off as true the written instruments which he knew to be forged. The proper focus is not on King's signatures, but on the other obvious alterations to the instruments.

The trial court made detailed findings of fact regarding each of the three documents, finding that each was "obviously altered." CP at 42. Because King does not challenge these findings they are verities on appeal. *Homan*, 181 Wn.2d at 106. The trial court's conclusion that King committed forgery rested on its finding that the "instruments were obviously altered to the point where a reasonable person would suspect their authenticity, and know they are forged." CP at 43. In other words, it was the obvious alteration on the face of the documents that formed the basis for the trial court's conclusion. Thus, King's signature on the back of the documents was immaterial.

King likens the facts of this case to those in *State v. Mark*[6] and *Marshall*, but his reliance is misplaced. In *Mark* and *Marshall*, pharmacists submitted reimbursement claim forms with their own signatures purporting that authorized physicians had prescribed medication. 94 Wn.2d at 522; 25 Wn. App. at 241-42. Washington appellate courts reversed the forgery convictions in both cases because the claim forms at issue were genuine and unaltered and the pharmacists' signatures on the forms were genuine, and therefore, there was no forgery. 94 Wn.2d at 523; 25 Wn. App. at 241-42. This case is more like *State v. Scoby*, where Scoby passed off as true a $1

---

[6] 94 Wn.2d 520, 618 P.2d 73 (1980).

bill that had been altered to appear to be a $20 bill. 117 Wn.2d 55, 61, 810 P.2d 1358, *amended on recons*., 815 P.2d 1362 (1991). There, our Supreme Court affirmed Scoby's forgery conviction because the bill Scoby handed to the cashier was not what it purported to be and sufficient evidence showed that Scoby knew of the alteration. *Scoby*, 117 Wn.2d at 62-63. Similarly here, the documents presented by King had been obviously altered with white out and scribbling.

The trial court's findings of fact support its legal conclusion that King committed forgery by knowingly depositing into the ATM documents he knew were forged because they were obviously altered. Accordingly, King's argument on this ground fails.

## II. LEGAL EFFICACY

King also argues that the State failed to provide sufficient evidence that the unsigned money order in count I constituted a written instrument with legal efficacy. We agree.

To prove King committed forgery, the State bore the burden of proving that King possessed, uttered, offered, disposed of, or put off as true a written instrument. RCW 9A.60.020(b). In the crime of forgery, a "written instrument" is:

> (a) Any paper, document, or other instrument containing written or printed matter or its equivalent; or (b) any access device, token, stamp, seal, badge, trademark, or other evidence or symbol of value, right, privilege, or identification.

RCW 9A.60.010(77). This statutory definition contains a common law requirement that the instrument have "legal efficacy," or be "'something which, if genuine, may have legal effect or be the foundation of legal liability.'" *Scoby*, 117 Wn.2d at 57-58 (quoting *Scoby*, 57 Wn. App. 809, 811, 790 P.2d 226 (1990)). "[A] written instrument can support a charge of forgery when it

is incomplete, but not when it is so incomplete that it would lack legal efficacy even if genuine." *State v. Smith*, 72 Wn. App. 237, 243, 864 P.2d 406 (1993).

The case law does not provide a framework for evaluating the legal efficacy of a purported financial instrument. However, in *Smith*, we held that a check lacking the signature of any drawer fails the legal efficacy test because under the Uniform Commercial Code (UCC) § 3-510 "[n]o person is liable on an instrument unless his signature appears thereon." 72 Wn. App. at 243 (alteration in original) (quoting former RCW 62A.3-401(1) (1965)). Stated another way, the State was required to prove that Western Union—or anyone else—was liable on the money order in question.

Here, the State makes several arguments to support its position that the money order passed the legal efficacy test. First, the State attempts to distinguish *Smith* by arguing that the court there relied on statutes pertaining to checks drawn on banks, and money orders are instruments that do not require a drawer's signature. The State is correct that the UCC does not expressly include money orders in its definition of negotiable instrument. *See* RCW 62A.3-104. As a result, there is no express requirement in the UCC for a maker's signature on money orders. *See* RCW 62A.3-401. However, the mere fact that the UCC does not include a signature requirement for money orders does not prove that a money order without a signature has legal efficacy.

The State also argues that the money order did not require a purchaser's signature to have legal effect, as evidenced by King's successful negotiation of the money order at the ATM. But the fact that a document was negotiated is not the test for legal efficacy. The unsigned check in

*Smith* was also cashed. 72 Wn. App. at 238. The State provides no authority to support its argument that the ATM's acceptance of the unsigned money order conferred legal efficacy.

The State further argues that the purchaser's signature was merely an agreement to abide by the terms on the reverse side of the money order, which does not state that the money order requires a purchaser's signature. But the reverse side of the money order does state, "Should this item bear any *unauthorized signature* . . . issuer will either stop payment hereon or charge back against any endorsement." Ex. 4 (emphasis added). That an unauthorized signature would invalidate the money order suggests that a signature bears some meaning; it does not imply that the money order is valid without a signature.[7]

In order to support a conviction for forgery, the State had to prove that the unsigned money order held the legal efficacy necessary to be a written instrument; it did not. We hold that the State failed to provide sufficient evidence to support King's conviction for count I and reverse.[8]

We reverse King's conviction on count I with prejudice and remand for resentencing. We affirm King's convictions on counts II and III.

---

[7] The State also invites this court to visit Western Union's "blog" which apparently discusses how to fill out a money order. This court declines the State's invitation to search for evidence not presented at the trial court. *See* CANON OF JUDICIAL CONDUCT 2.9(C): "A judge shall not investigate facts in a matter pending or impending before that judge, and shall consider only the evidence presented and any facts that may properly be judicially noticed, unless expressly authorized by law."

[8] King also argues that he received ineffective assistance of counsel because his defense counsel failed to raise the defense of legal efficacy to count I or to bring a *Knapstad* motion to dismiss. *See State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986). Because we reverse King's conviction on count I based on insufficient evidence, we do not address this argument.

No. 52775-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

_____
Lee, C.J.

_____
Melnick, J.