IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38220-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROBERT JAMES ROGERS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Robert James Rogers appeals his convictions for forgery, attempted second degree theft, and second degree identity theft. These convictions pertain to a victim by the name of Keith Funston. We affirm.

## FACTS

In July 2019, Robert James Rogers entered Washington Federal Bank in Spokane County and attempted to cash a forged check, ostensibly issued to him by Keith Funston. The teller became suspicious and informed Mr. Rogers that Mr. Funston would need to verify the check. Mr. Rogers told the teller he would leave and retrieve Mr. Funston.

Washington Federal Bank called Mr. Funston and informed him that an unknown male had attempted to cash a check ostensibly issued by Mr. Funston for $1,400. The next morning, Mr. Funston drove from his home in Stevens County to Washington Federal

Bank and viewed photographs of the man who tried to cash the check. Mr. Funston did not recognize the individual in the video nor had he written him a check. When Mr. Funston returned home, he inspected his checkbook and discovered three checks were missing. Mr. Funston later learned his nephew-in-law and a friend stole the checks while housesitting for Mr. Funston.

Detective Mark Coon of the Stevens County Sheriff's Office was assigned the case involving Mr. Funston's check. He viewed video from Washington Federal Bank and identified Mr. Rogers based on Mr. Rogers's distinctive tattoos and bracelet.

Detective Coon got in touch with Detective Dustin Hughes of the Colville Police Department, who was working on a similar forgery case involving Mr. Rogers. In that case, Mr. Rogers was believed to have cashed or attempted to cash checks in Stevens County ostensibly written by a deceased man, Leroy Buchanan. The two detectives viewed surveillance video from different businesses at which Mr. Rogers attempted to cash forged checks and established probable cause for Mr. Rogers's arrest. He was arrested soon after.

Mr. Rogers was charged in Stevens County with forgery, second-degree attempted theft, and second-degree identify theft in the Funston case. The State separately charged Mr. Rogers with 11 other crimes related to the Buchanan case. The trial court granted the State's unopposed motion to try the Funston and Buchanan cases jointly. In the order

granting the motion, it is noted that Mr. Rogers did not object to consolidating the two cases for trial. During a pretrial hearing, defense counsel commented that separate trials could result in lengthy consecutive sentences. The first trial in February 2021 resulted in a hung jury and the court declared a mistrial. Defense counsel did not meet with the jurors following the mistrial.

In April 2021, the case again proceeded to trial. Prior to trial, defense counsel made an oral motion to sever the Funston and Buchanan cases. The State opposed the motion, arguing that even if the cases were tried separately, much of the evidence would overlap. The trial court denied the motion to sever.

At trial, the State introduced surveillance video of Mr. Rogers attempting to cash the Funston check in Spokane County and cashing one of the Buchanan checks at a gas station in Stevens County. The State also elicited testimony from the detectives assigned to each of the cases regarding how they came to identify Mr. Rogers.

During the jury instruction conference, the court brought up the issue of the joint trial and asked defense counsel if Mr. Rogers wanted to renew his motion to sever. Counsel responded in the negative.

The court provided the jury with an instruction which stated that "knowledge" could be established if a person acts intentionally as to a fact required to prove an element

of the crime. Clerk's Papers (CP) at 343. The jury convicted Mr. Rogers on all counts

charged in both the Funston and Buchanan cases.

Sentencing took place on April 27, 2021. On that date, Mr. Rogers faced

sentencing not only for the Funston and Buchanan cases, but also convictions in two

additional cases involving bail jumping and trafficking in stolen property. At sentencing,

the State proffered evidence of Mr. Rogers's foreign convictions, two of which defense

counsel agreed were comparable to Washington crimes and should be included in Mr.

Rogers's offender score. With respect to the Funston and Buchanan cases, the trial court

imposed concurrent sentences of 57 months. The court also imposed a concurrent

sentence of 57 months for bail jumping. But the court ordered an exceptional sentence as

to the trafficking in stolen property case, in which the court imposed a term of 84 months,

to run consecutively.

Mr. Rogers timely appeals his judgment and sentence.

## ANALYSIS

*Venue*

An objection to venue is waived if not timely asserted. *State v. Dent*, 123 Wn.2d

467, 478-80, 869 P.2d 392 (1994); *State v. McCorkell*, 63 Wn. App. 798, 801, 822 P.2d

795 (1992). *See also* CrR 5.1(c) ("Any objection to venue must be made as soon after the

initial pleading is filed as the defendant has knowledge upon which to make it."). Because Mr. Rogers did not object to venue during the trial court proceedings, he can obtain relief on appeal only if he can establish that his attorney's failure to object to venue deprived him of effective assistance of counsel.

To establish ineffective assistance of counsel, Mr. Rogers must show (1) "defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness" and (2) "the deficient performance resulted in prejudice, i.e., that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have differed." *State v. Reichenbach,* 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Counsel's representation is not deficient if it "can be characterized as legitimate trial strategy or tactics." *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Failure to meet either prong of this test is dispositive of an ineffective assistance claim. *State v. Sosa*, 198 Wn. App. 176, 185, 393 P.3d 796 (2017).

Here, even if Mr. Rogers had a viable venue objection, counsel's decision to forego an objection was reasonably strategic. Counsel recognized that simultaneous trials in the same venue would have the advantage of concurrent sentencing. There was no discernable downside to proceeding in Stevens County as opposed to Spokane County. Had Mr. Rogers been tried in Spokane County in the Funston Case, that court could have

sentenced him to a consecutive sentence to that of the Buchanan case in Stevens County.

Mr. Rogers has not shown his attorney performed deficiently by failing to assert an

objection to venue.

*Joinder/Consolidation*

Mr. Rogers argues the Buchanan and Funston cases were improperly joined for

trial. Mr. Rogers also contends that he was deprived of effective assistance of counsel

because defense counsel agreed to consolidation and did not renew the motion to hear the

two cases separately before or at the close of the evidence.[1] Because Mr. Rogers did not

preserve an objection to consolidation at trial, he can obtain relief on appeal only if he can

establish his attorney's failure to object deprived him of effective assistance of counsel.

Mr. Rogers's arguments regarding consolidation and severance fail for the same

reason as his venue arguments. Mr. Rogers did not preserve an objection to joinder or the

motion to sever. And counsel's failure to object to the combined trial is fairly explained

by the desire to avoid consecutive sentences.

---

[1] The parties confuse joinder of offenses under CrR 4.3 with consolidation of related offenses for trial under CrR 4.3.1. Joinder and consolidation are related, yet distinct concepts. *See State v. Bluford*, 188 Wn.2d 298, 305-06, 393 P.3d 1219 (2017). CrR 4.3 governs only the joinder of multiple offenses in a single charging document. CrR 4.3.1 addresses consolidation of offenses or defendants for purposes of trial. This distinction, however, is inapplicable to our current analysis.

*Sufficiency of the evidence*

Mr. Rogers contends the State failed to prove each element of the crime of forgery because it did not provide sufficient evidence to support the conclusion that Mr. Rogers knowingly possessed a forged check.

In order to convict Mr. Rogers of forgery, the State had to prove that he knew the check bearing Mr. Funston's name was forged. RCW 9A.60.020(b). In reviewing Mr. Rogers's challenge, this court considers all of the evidence in the light most favorable to the prosecution. *State v. Scoby,* 117 Wn.2d 55, 61, 810 P.2d 1358 (1991). This court accepts the State's evidence as true and draws all reasonable inferences in the State's favor. *State v. Salinas,* 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence is as reliable as direct evidence. *State v. Turner,* 103 Wn. App. 515, 520, 13 P.3d 234 (2000). If under these guidelines, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, this court will uphold the conviction. *Scoby,* 117 Wn.2d at 61.

Possession of a forged instrument, alone, is not enough to prove guilty knowledge, but possession together with even slight corroborating evidence can be sufficient. *Id.* at 61-62. A false explanation, or one that is improbable or difficult to verify, can be sufficient corroboration to prove guilty knowledge. *See State v. Ladely,* 82 Wn.2d 172,

7

175, 509 P.2d 658 (1973) (addressing guilty knowledge in the context of possession of stolen property).

Here, circumstantial evidence supports the knowledge element of Mr. Rogers's forgery conviction. Mr. Rogers falsely claimed to know Mr. Funston when he attempted to cash the check. Testimony at trial disproved this assertion. The fact that Mr. Rogers attempted to cash a check bearing his name and written by a man he did not know seems to be strong evidence that Mr. Rogers did in fact knowingly possess a forged instrument. Mr. Rogers also informed the teller he would leave, retrieve Mr. Funston, and return to cash the check. Because Mr. Rogers did not know Mr. Funston and Mr. Funston had not written the check, this was likely an attempt by Mr. Rogers to avoid suspicion, and serves as circumstantial evidence of knowledge.

A rational trier of fact could have found beyond a reasonable doubt that Mr. Rogers knew he possessed a forged check. Mr. Rogers's sufficiency challenge fails.

*Jury unanimity*

Mr. Rogers seems to argue that the State did not present evidence that he either falsely made, falsely completed, or falsely altered the check; but nevertheless failed to

elect between the two alternative means of the forgery statute, and therefore the jury did

not unanimously convict Mr. Rogers of a specific type of forgery.[2]

An alternative means crime is one where the statute defining an offense provides

more than one method of violation. *State v. Barboza-Cortes*, 194 Wn.2d 639, 643, 451

P.3d 707 (2019). Trial on an alternative means crime can raise unanimity problems if

the jury is instructed on more than one alternative means and is not given a unanimity

instruction. *See State v. Woodlyn*, 188 Wn.2d 157, 162-64, 392 P.3d 1062 (2017).

Forgery is a crime that may be committed by two alternative means; a person either

(1) "falsely makes, completes, or alters a written instrument," RCW 9A.60.020(1)(a), or

(2) "possesses, utters, offers, disposes of, or puts off as true a written instrument which he

knows to be forged,"  RCW 9A.60.020(1)(b).

Our pattern jury instructions in Washington account for the fact that forgery

encompasses two alternative means, and as such provide two distinct instructions.

11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL

130.02, at 655 (5th ed. 2021) (WPIC); WPIC 130.03, at 658. WPIC 130.02 covers forgery

under RCW 9A.60.020(1)(a). WPIC 130.03 covers forgery under RCW 9A.020(1)(b).

---

[2] This is not a specific assignment of error and arguably does not merit review.

Mr. Rogers received an instruction (jury instruction 14) based on WPIC 130.03. As contemplated by RCW 9A.020(1)(b), jury instruction 14 required the jury to find Mr. Rogers possessed, offered or put off as true a written instrument that had been falsely made.

Because Mr. Rogers was instructed on only one of the two alternative means of forgery, there was no potential unanimity problem. To the extent Mr. Rogers has made a unanimity claim on appeal, that claim fails.

*Jury instruction 7*

For the first time on appeal, Mr. Rogers assigns error to jury instruction 7. Because this claim has not been preserved, relief can be justified only if Mr. Rogers is able to establish counsel was ineffective for failing to object to the instruction.

At trial, the court read jury instruction 7 to the jury, stating the following:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact, circumstance, or result. . . .
> . . . .
> When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

10

CP at 343; 3 Report of Proceedings (RP) (Apr. 23, 2021) at 874. Mr. Rogers argues that

the "intentionally" language in the final sentence of jury instruction 7 requires reversal

under *State v. Goble*, 131 Wn. App. 194, 126 P.3d 821 (2005).

*In Goble*, Division Two of this court analyzed the same "knowledge" instruction

at issue here. 131 Wn. App. at 202. *Goble* held that the last sentence in the instruction

was confusing under the circumstances of that case because it potentially allowed the jury

to find the defendant guilty of third-degree assault against a law enforcement officer if the

jury found that the defendant *intentionally* assaulted the victim, but without having to find

that the defendant *knew* the victim was a law enforcement officer performing his official

duties *Id*. at 202-03. There, the court held the instruction improperly conflated the

separate intent and knowledge elements required under the to-convict instruction into

a single element and relieved the State of its burden of proving that the defendant knew

the victim's status if the jury found that the assault was intentional. *Id*. at 201.

Here, however, there is no second required mental element to conflate. The *Goble*

court's reasoning was motivated by the concern that the instruction potentially allowed

the jury to find the defendant guilty of third-degree assault against a law enforcement

officer without having to find that the defendant knew the victim was a law enforcement

officer performing official duties if it found the defendant intentionally assaulted the

victim. Here, the jury was required to find Mr. Rogers knew the check was forged. There

was not an additional mens rea element regarding what Mr. Rogers knew about the check.

As the State points out, *Goble's* holding has been expressly limited to cases that require

the State to prove two mental states. *State v. Gerdts,* 136 Wn. App. 720, 728, 150 P.3d

627 (2007); *State v. Boyd,* 137 Wn. App. 910, 924, 155 P.3d 188 (2007).

*Goble* has no application here. Mr. Rogers's attorney was not ineffective for

failing to challenge the knowledge instruction on this ground.

*Meeting with jurors*

Mr. Rogers contends his trial counsel provided ineffective assistance by failing to

meet with the jurors from the mistrial to determine why the jury could not reach a verdict.

Mr. Rogers does not to point to any authority requiring that defense counsel meet with

jurors, nor can he demonstrate prejudice from counsel's failure to do so. While it certainly

would be preferable for defense counsel to meet with jurors when the court gives

permission to do so, Mr. Rogers points to no authority demonstrating that the failure to

meet with jurors constitutes ineffective assistance of counsel.[3]

---

[3] The initial trial took place in February 2021. We do not know whether COVID concerns may have impacted defense counsel's decision not to meet with jurors.

12

*Comparability of foreign convictions*

Mr. Rogers argues defense counsel was ineffective for stipulating to the comparability of the California and Montana convictions without requiring the court to conduct a comparability analysis. Because the record does not show the California and Montana convictions fail the comparability analysis, Mr. Rogers has not demonstrated deficient performance.

Under Washington's Sentencing Reform Act of 1981, chapter 9.94A RCW, out-of-state convictions can be included in a defendant's offender score if they are comparable to a Washington offense. A two-part test governs the comparability analysis. *State v. Thiefault*, 160 Wn.2d 409, 414-15, 158 P.3d 580 (2007). The first part involves legal comparability. The second part looks to factual comparability. *Id*. at 415.

Legal comparability involves an analysis of the applicable elements. If the Washington offense and foreign offense have substantially the same elements or if the elements of the foreign conviction are narrower than those of the Washington offense, legal comparability is met. Should legal comparability be satisfied, the conviction qualifies for inclusion in the offender score and the court need not look to factual comparability.

Factual comparability comes into play if the elements of the foreign offense are

broader than the Washington offense. When looking to factual comparability, the question

is whether the facts admitted or proven beyond a reasonable doubt in the foreign tribunal

would have been sufficient to justify a Washington conviction. *State v. Morley,* 134

Wn.2d 588, 606, 952 P.2d 167 (1998); *In re Pers. Restraint of Lavery,* 154 Wn.2d 249,

258, 111 P.3d 837 (2005).

*California conviction*

The California conviction at issue in Mr. Rogers's appeal involved a violation of

sections 2800.1 and 2800.2 of the California Vehicle Code. These statutes provide:

> (a) Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor punishable by imprisonment in a county jail for not more than one year if all of the following conditions exist:
>
>> (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.
>>
>> (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.
>>
>> (3) The peace officer's motor vehicle is distinctively marked.
>>
>> (4) The peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3

of Part 2 of the Penal Code, and that peace officer is wearing a distinctive uniform.

Cal. Vehicle Code § 2800.1.

(a) If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year. The court may also impose a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or may impose both that imprisonment or confinement and fine.

(b) For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs.

Cal. Vehicle Code § 2800.2.

The allegedly comparable Washington crime is attempting to elude a police vehicle in violation of RCW 46.61.024:

(1) Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.

15

The first inquiry is whether the elements of the California offense are substantially similar to the elements of the Washington offense. *Thiefault*, 160 Wn. 2d at 415. Both offenses require proof of the same actus reus, but the mens reas differ.[4] Washington only requires a defendant drive their vehicle in a "reckless manner." RCW 46.61.024(1). This entails proof of heedlessness or indifference to consequences. *State v. Roggenkamp*, 153 Wn.2d 614, 622, 106 P.3d 196 (2005).[5] California, in contrast, requires proof that the defendant drove with a "willful or wanton disregard for the safety of persons or property." Cal. Vehicle Code § 2800.2(a). This is a "higher mental state" than what is required for recklessness. *Roggenkamp*, 153 Wn.2d at 626. Thus, California's law is narrower than Washington's. This satisfies the criteria for legal comparability.[6]

---

[4] Mr. Rogers complains that the California law does not require proof that the police officer is wearing a distinctive uniform. He is incorrect. *See* Cal. Vehicle Code § 2800.1(a)(4).

[5] *Roggenkamp* analyzed the meaning of "reckless" in the context of vehicular homicide and vehicular assault. We have recognized the same definition of "reckless" applies in the context of Washington's attempt to elude statute. *State v. Ridgley*, 141 Wn. App. 771, 781, 174 P.3d 105 (2007) (holding "reckless" has the same definition in the attempting to elude statute as in the vehicular homicide and vehicular assault statutes).

[6] Mr. Rogers points to section 2800.2(b) of the California Vehicle Code, which states that "a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under section 12810 occur, or damage to property occurs." Mr. Rogers was not charged under section 2800.2(b). He was charged under section 2800.2(a) and pleaded guilty as charged. Section 2800.2(b) has no bearing on his case.

16

We therefore need not look to factual comparability.

*Montana conviction*

The Montana conviction at issue in Mr. Rogers's appeal involved a violation of

Montana Code Annotated section 45-6-301(3):

> A person commits the offense of theft when the person purposely or knowingly obtains control over stolen property knowing the property to have been stolen by another and:
> (a) has the purpose of depriving the owner of the property;
> (b) purposely or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
> (c) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property.

The allegedly comparable Washington crime is felony possession of stolen

property in violation of RCW 9A.56.160:

> (1) A person is guilty of possessing stolen property in the second degree if:
> (a) He or she possesses stolen property, other than a firearm as defined in RCW 9.41.010 or a motor vehicle, which exceeds seven hundred fifty dollars in value but does not exceed five thousand dollars in value; or
> (b) He or she possesses a stolen public record, writing or instrument kept, filed, or deposited according to law; or
> (c) He or she possesses a stolen access device.

The nature of the Montana and Washington offenses are substantially similar once

one takes into account Washington's definition of "possessing stolen property," which

> means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the

same to the use of any person other than the true owner or person entitled thereto.

RCW 9A.56.140(1).

Nevertheless, Montana's statute is broader than Washington's in that it is not confined by a dollar amount. Felony theft in Washington requires a value of at least $750. Montana has no similar requirement. An individual convicted of violating Montana's statute has not necessarily violated all the elements of Washington's second degree possession of stolen property statute. Thus, the two statutes are not legally comparable.

Turning to factual comparability, because this claim comes to us in the form of a direct appeal, we do not have all the records pertaining to Mr. Rogers's Montana conviction. We are therefore unable to perform a factual comparability analysis. At Mr. Rogers's sentencing hearing, the State described the Montana conviction as involving possession of over $1,500 in property. 3 RP (Apr. 27, 2021) at 962. Assuming this clarification was adequately established by Mr. Rogers's Montana records, the offense would have satisfied the factual comparability analysis and it would not have been deficient for trial counsel to fail to object.

On the current record, Mr. Rogers has not established that trial counsel performed deficiently in failing to object to the Montana conviction. If Mr. Rogers has evidence

indicating the Montana conviction did not meet the criteria for factual comparability, he will need to raise this issue in a personal restraint petition.

Mr. Rogers has not shown that the California and Montana convictions were not comparable to Washington crimes. He therefore has not established counsel performed deficiently in stipulating to their inclusion in Mr. Rogers's offender score.

CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Staab, J.

19